MacGINNISS, Respondent, v. BOSTON & MONTANA CONSOLIDATED COPPER & SILVER MINING COMPANY et al., Appellants.

(No. 2,001.)

(Submitted November 23, 1903.    Decided February 1, 1904.)

*Corporations—Ultra Vires Acts—Rights of Minority Stockholders—Injunction Suits—Charter Violations—Consolidation of Corporations—Trusts—Constitutional and Statutory Prohibition—Holding Corporations—Right to Vote Stock—Corporate Violation of Law—Actions by Private Citizens—Appeal—Sufficiency of Notice—Persons Aggrieved.*

1.  An order entered on the minutes, granting an injunction, is an appealable order.

2.  A notice of appeal from two orders, couched in separate paragraphs, by which, reading the first in connection with each of the others, a separate and distinct notice of each appeal is given, was sufficient, as respondents understood therefrom that appellants intended to prosecute two appeals.

3.  The fact that two separate notices of appeal from different orders were included in one paper, though an appeal does not lie from one of the orders, does not affect appellants' right to prosecute the appeal from the other appealable one.

4.  No appeal lies from an order signed by a judge, but intended as process to carry into effect an order granting an injunction.

5.  A defendant, over whom the district court acquired no jurisdiction by service of process, is not aggrieved by an order of such court granting an injunction against him.

6.  A party who takes no appeal can obtain no relief in the supreme court on the appeal of other parties, except so far as the relief granted appellants may incidentally affect his rights.

7.  A private citizen cannot, as such, and through the medium of a civil action, try the issue as to whether a foreign corporation is doing business within the state in violation of law, or whether a combination formed by such corporation, through its officers, and the stockholders of domestic corporations, is a monopoly in violation of the Penal Code, rendering such domestic corporations liable to punishment and forfeiture of their franchises and property, but such questions, as independent grounds of relief, must be determined by and on behalf of the state, through the attorney general.

8.  A court of equity cannot, at the instance of a minority stockholder, decree a forfeiture of the stock of any other stockholder in the same corporation to the corporation, on the ground that the title of such stockholder has been acquired and is held in violation of the corporation's charter.

9.  So far as the participation of a corporation and its officers in an unlawful combination to create a monopoly subjects its property and franchises to forfeiture, and thus imperils the property rights of a minority stockholder, he may, through the medium of equity, compel it and them to abandon such

unlawful connection, and return to a performance of their charter obligations, to-wit, the accomplishment by lawful means of the purposes for which the corporation was formed.

10. Constitution, Article XV, treats restrictively of the rights and powers of corporations in general, absolutely prohibiting the combination and consolidation of certain ones, such as competing railroads (Section 6) or telegraph and telephone companies (Section 14), and in reference to other combinations provides, in Section 20, that no corporation shall combine or form a trust, or make a contract with any person, corporation, etc., "for the purpose of fixing the price, or regulating the production of any article of commerce, or of the product of the soil, for consumption by the people." Penal Code, Section 321, follows literally the language quoted, making some additions of the same general nature, and prescribes a penalty for its violation. *Held* that, to bring a combination within the provisions of Constitution, Article XV, Section 20, and to subject it and its promoters to the penalty provided by Penal Code, Section 321, there must be shown a specific intent, or necessary tendency, to accomplish the prohibited result of regulation of price or production.

11. In cases involving the above provisions, the nature of the arrangement or combination is a question of fact, to be determined by the court from the evidence before it, or from the vice inherent in the contract of combination itself.

12. Evidence *held* not to show an intent or necessary tendency of combining corporations to fix the price or regulate the production of copper, such as is prohibited by Constitution, Article XV, Section 20, and Penal Code, Section 321.

13. It is not every unlawful act of a corporation that may be questioned by a minority stockholder in an action against it, but to enable him to complain he must be injuriously affected, either directly or indirectly.

14. One corporation cannot hold or vote stock in another unless expressly authorized so to do by the terms of its charter or by statute.

15. Since the Constitution (Article XV) does not prohibit the consolidation of corporations, except of certain kinds and for certain purposes, and Civil Code, Section 527, expressly authorizes the consolidation of domestic mining corporations, and Session Laws of 1899, p. 113, authorizes such corporations to sell or exchange their property and assets to other corporations, domestic or foreign, for the whole or any part of their stock, whether mining corporations or not, it is not against the public policy of this state to permit, and mining corporations are permitted, to hold and vote stock in other corporations of like character.

16. The holding of stock in a corporation by one person or another does not affect the rights of any other stockholder so long as the purposes of the corporation are carried out under its charter for the benefit and profit of all the stockholders alike, according to the best judgment of those who have the active management of the business, and so long as the transaction by which the stock was obtained does not violate any constitutional or statutory provision.

17. Since Code of Civil Procedure, Section 570, provides that actions shall be prosecuted by the real party in interest, it is competent for a corporation, the actions of which are questioned by a minority stockholder, to show that he is not in fact the real owner of the stock standing in his name.

18. One possessing a right may enforce it irrespective of his motive in so doing, and his motive is not a subject of inquiry except as ground for impeachment.

*Appeal from District Court, Silver Bow County; William Clancy, Judge.*

ACTION by John MacGinniss against the Boston & Montana Consolidated Copper & Silver Mining Company and another, impleaded with A. S. Bigelow and others. From orders granting temporary injunctions, defendants separately appeal. Reversed.

## STATEMENT OF THE CASE.

This action was brought by the plaintiff, as a minority stockholder in the Boston & Montana Consolidated Copper and Silver Mining Company—hereinafter referred to as the Montana Company—on behalf of himself and all other minority stockholders occupying the same position as himself. He alleges that he is the owner and holder of 100 of the 150,000 shares of the capital stock of the company, which was organized under the laws of Montana prior to the year 1898. No other stockholder has joined with him in the action. The complaint is very long, containing some repetitions and a large amount of immaterial matter. It charges, in substance:

That the defendant Amalgamated Copper Company—hereinafter referred to as the Amalgamated Company—is a corporation organized under the laws of New Jersey, and having its principal place of business in that state; that the purpose of its organization was to secure a monopoly of the production and sale of copper; that it has become the owner of a majority of the shares of the Montana Company and other corporations in Montana and elsewhere, some of which are mining corporations owning properties in the city of Butte, adjacent to the properties of the Montana Company; that the stock in all of these Montana corporations was acquired by the Amalgamated Company under an agreement with the officers and a majority of the stockholders of the Montana Company and the other corporations, with the purpose, entertained by the Amalgamated Company, of controlling all of the affairs and conducting all of the business of said corporations, through its officers and agents or boards of directors elected by it; that, as a part of the agreement aforesaid, the officers and directors of the Mon-

tana Company stipulated to turn over the control and management of the business and property of the Montana Company to the Amalgamated Company, and to obey in all things, and submit to, the direction of the officers of the Amalgamated Company; that the officers and directors of the other corporations having adjacent properties in Butte were parties to this agreement also; that, in pursuance of the same, the officers of the Amalgamated Company have assumed the possession of the properties of said companies, and the control and direction of their officers and business affairs; that, if this condition of affairs is permitted to continue, the Montana Company will suffer loss in this: that, the mining properties of the various companies being adjacent to each other, controversies will arise among them over their respective rights beneath the surface, and that, by reason of the controlling position of the Amalgamated Company, these controversies will be settled by it to the detriment of the Montana Company, and thus of the rights of the plaintiff; that the Amalgamated Company, though engaged in conducting the business of mining and smelting copper through these companies as aforesaid in the state of Montana, has not complied with the laws of the state permitting foreign corporations to do business therein, and is thus engaged in conducting a business in Montana in violation of the law; that the plaintiff and the other minority stockholders did not and have not assented to the arrangement by which the Amalgamated Company acquired its control of the Montana Company and its properties; that the Amalgamated Company has no right to own or control any property in Montana; that its action in the premises is in violation of Section 20 of Article XV of the State Constitution, and Section 321 of the Penal Code; that the other defendants, except Scallon, are the directors and officers of the Montana Company, and because of their participation in and furtherance of the purposes of the Amalgamated Company, aided by said Scallon and other agents of that company in Montana, are not fit and proper persons to have charge and control of the property of the Montana Company, acting,

as they do and will, at the direction of the Amalgamated Company; that the purpose of the organization of that company was also to evade the laws of Montana, and to override and disregard the rights of the minority stockholders; and that because of the participation by the officers and a majority of the stockholders of the Montana Company in the combination aforesaid, and in the violation of the law in pursuance thereof, the property and franchises of said company are subject to forfeiture to the state of Montana, and thereby the minority stockholders will be deprived of the value of their stock.

The relief demanded is: That the Amalgamated Company be decreed to have no right to the stock held by it; that said stock be adjudged to belong to the Montana Company; that·the Amalgamated Company and its agents be enjoined from voting the stock or taking any part in the management of the affairs of the Montana Company, or receiving any money or property or dividends from it; that the other defendants who are acting for the Amalgamated Company be enjoined from so doing; that the officers of· the Montana Company be enjoined from transferring or permitting the transfer of any stock upon its books now held by the Amalgamated Company, and from allowing any such stock to be voted at any meeting of the company; that the defendant directors of the Montana Company be enjoined from acting as such; that the agreement by which the Amalgamated Company obtained the stock held by it be declared null and void, and that all the defendants be required to account for their conduct with reference to it, and to deliver to the Montana Company all the property and money received from it; that the Amalgamated Company be declared a trust and monopoly, and be enjoined forever from doing business in the state of Montana, either directly or through its agents or any person or corporation whatsoever; that a receiver be appointed to take charge of the property and business of the Montana Company during the pendency of the action; and that, until final hearing, an injunction issue to restrain any wrongful act on the part of the defendants, and to protect the rights of the minority stockholders in the meantime.

The complaint was filed on July 23, 1901. At that time an order was made requiring the defendants to appear and show cause on September 2d, following, why an injunction *pendente lite* should not issue. In the meantime the Montana Company and the defendant directors were restrained from paying dividends to the Amalgamated Company, and from permitting it to interfere in the affairs of the Montana Company by voting its stock. The order also restrained the directors from transferring stock on the books of the company. For various reasons a hearing was not had under the order until September 1, 1903. None of the defendants were served with process, except the Montana Company, C. S. Batterman and William Scallon. The defendant William Scallon interposed a general demurrer to the complaint. The defendants Montana Company and C. S. Batterman interposed a motion to strike from the complaint many matters alleged to be immaterial. The cause is now pending in the district court upon the legal questions raised by the demurrer and the motion to strike out. One of the rules of that court disallowing the entry of default for want of an answer until the motion to strike out has been disposed of.

At the close of the hearing under the order to show cause, and on October 22, 1903, the court entered an order in the minutes directing an injunction to issue, restraining the defendant Montana Company from permitting the stock to be voted by the Amalgamated Company, from allowing it to be transferred in the books of the company, and from paying dividends thereon. The other defendants were also enjoined from acting as representatives of the Amalgamated Company. The judge also signed and filed with the clerk a written order in the form of an injunction, which, by its own terms, became effective as an injunction upon the filing by the plaintiff of a bond or undertaking in the sum of $10,000. The defendants Montana Company and William Scallon took separate appeals to this court from each of these orders.

*Mr. A. J. Shores, Messrs. Forbis & Evans, Mr. W. W. Dixon, Mr. C. F. Kelley,* and *Mr. D. Gay Stivers,* for Appellants.

The court was without jurisdiction over the Amalgamated Copper Company, and on this account should have denied the application for injunction. (*Shields* v. *Barrow,* 17 How. 130; Ency. of Pl. & Pr. Vol. 15, pages 611, 612, and cases cited; Beach's Modern Equity Practice, Secs. 54, 55; Story's Equity Jurisprudence, Sec. 1526; *State of Minnesota* v. *Northern Securities Co.,* 184 U. S. 199; *Taylor & Co.* v. *Southern Pac. Ry.,* 122 Fed. 127; *Union Terminal R. Co.* v. *Board R. R. Commissioners* (Kan.), 35 Pac. 224; *State* v. *Anderson,* 5 Kan. 90; *Walker* v. *Cambern* (Kan.), 47 Pac. 980; *Knoph* v. *Chicago R. E. Board,* 173 Ill. 331, 50 N. E. 660; *City of Anthony* v. *State* (Kan.), 30 Pac. 488; *Morgan* v. *Rose,* 22 N. J. Eq. 583-592; *Elkins* v. *Camden & Atlantic R. R. Co.,* 36 N. E. Eq. 241; *Beasley* v. *Shiveley* (Ore.), 26 Pac. 846; Beach on Injunctions, Secs. 373-4; *Hoppock* v. *Chambers* (Mich.), 56 N. W. 86; *Graham* v. *City of Minneapolis* (Minn.), 42 N. W. 291; *Hutchinson* v. *Burr,* 12 Cal. 103; *Smith* v. *Crissey* (N. C.), 3 Abbott, 149; *New York Bank Note Company* v. *Hamilton Bank Note Company,* 31 N. Y. Supp. 1060; *People* v. *Clark,* 53 Barb. 171; *Tycon* v. *Virginia R. R. Co.,* Fed. Cases, No. 14,321; *Bailey* v. *Inglee et al.,* 2 Paige, 278; *Butcher et al.* v. *City of Camden,* 29 N. J. Eq. 478; *Con. Water Co.* v. *City of San Diego,* 84 Fed. 369; *Stillsmith* v. *Fisher Oil Co.,* 35 S. E. 15; *Erste, etc. Tosher* v. *First United, etc. Verien,* 66 N. Y. S. 356; *Goldey* v. *Morning News,* 156 U. S. 518; *Wabash Western Ry. Co.* v. *Brow,* 164 U. S. 271; *Leviniski* v. *Middlesex Banking Co.,* 92 Fed. 449, 462; *Doane* v. *Corbin,* 44 Ill. App. 463; *Ex parte State,* 71 Ala. 363; *Earle* v. *Beecher* (Tenn.), 7 Lea, 256; *Tucker* v. *Life Ass'n,* 112 N. C. 796; *Alexander* v. *Tolleston Club,* 110 Ill. 65, 77; *Freeman* v. *Alderson,* 119 U. S. 188; *Bennett* v. *Fenton,* 41 Fed. 285; *Webster* v. *Reid,* 11 How. 437; *Pennoyer* v. *Neff,* 95 U. S. 714; *Bunnell* v. *Bunnell,* 25 Fed. Rep. 214; *Porter Land & Water Co.* v. *Baskin,* 43 Fed. Rep. 323; *Wilson* v. *Seligman,* 144 U. S. 41; *Hart* v. *Sansom,* 110 U. S. 151; *Arndt* v. *Griggs,* 134 U. S. 316; *Pana* v. *Bowler,* 107 U. S. 529; *Cooper* v. *Reynolds,* 10 Wall. 308; *Brooklyn* v. *Ins. Co.,* 99 U. S. 362; *Empire* v.

*Darlington,* 101 U. S. 87; *St. Clair* v. *Cox,* 106 U. S. 353; *Roller* v. *Holly,* 176 U. S. 398; *Adams* v. *Heckscher,* 80 Fed. 742, 83 Fed. 281; *Jellinik* v. *Huron Copper Mining Co.,* 82 Fed. 778.)

The Amalgamated Copper Company may rightfully own, hold and vote its shares of stock in the Boston & Montana Company. The constitution and statutes of this state providing for the formation of corporations (prior to the passage of House Bill 132) authorized the organization of a company to subscribe for, invest and deal in the stocks of other domestic companies. (Constitution, Art. XV, Secs. 6, 14, 15; Civil Code, Sec. 411; *Carver Merc. Co.* v. *Hulme,* 7 Mont. 566.)

If it should be held that a domestic company may not be incorporated for the purpose of dealing in the stocks of other companies, it does not follow that it may not, under any conditions, acquire title to such stocks and exercise the privileges of a shareholder. (Civil Code, Sec. 436; *Cowell* v. *Springs Co.,* 100 U. S. 60; *Barnes* v. *Juddard* (Ill.), 7 N. E. 478.) There is nothing in the laws of this state which will preclude a corporation formed under the laws of another state from conducting within this state a business not authorized by statute to be conducted by a domestic corporation. (*State Christian Union* v. *Yuont,* 101 U. S. 356; *Cowell* v. *Springs Co.,* 100 U. S. 59; *Thompson* v. *Waters,* 25 Mich. 216; *Merrick* v. *Van Sanboord,* 34 N. Y. 208; Constitution, Art. XV, Sec. 11; *Stevens* v. *Pratt,* 101 Ill. 216.) The Amalgamated Copper Company is not doing any business within the state within the meaning of the phrase in Section 11, Article XV, of the Constitution. (*Shepp* v. *Schuylkill V. T. Co.,* 17 Montg. Co. Law Reporter, 52; *Cooper Mfg. Co.* v. *Ferguson,* 113 U. S. 734; *Del. & H. Canal Co.* v. *Mahlenbroeck,* 43 Atl. 978; *Wolf Dyer Co.* v. *Bigler,* 192 Pa. St. 466; *Babbitt* v. *Field,* 52 Pac. 775; *Am. Broom & Brush Co.* v. *Addicks,* 42 N. Y. Supp. 871; *Nat'l Knitting Co.* v. *Bronner,* 45 N. Y. Supp. 714; *Toledo Commercial Co.* v. *Glen Mfg. Co.* (Ohio), 45 N. E. 197; *Havens & Geddes Co.* v. *Diamond,* 93 Ill. App. 557; *Von Mach Co.* v.

*Light House,* 71 N. Y. Supp. 799; *Droge* v. *Ohrens & Ott Mfg. Co.,* 163 N. Y. 466, 57 N. E. 477; *M. I. Wilcox Cordage & Supply Co.* v. *Mosier* (Mich.), 72 N. W. 117; *Scottish & American Mortgage Co.* v. *Ogden,* 21 South. 116; *American Freeholder Land & Mortgage Co.* v. *Pierce,* 21 South. 972; *Niel* v. *New South Building & Loan Ass'n,* 46 S. W. 755; *Norton* v. *Union Bank & Trust Co.,* 46 S. W. 544; *Eastern Building & Loan Ass'n* v. *Bedford,* 88 Fed. 7; *Electric Light Co.* v. *Rust,* 23 South. 751; *Sullivan* v. *Sheehan,* 89 Fed. 248; *Security Co.* v. *Pan Handle Bank* (Tex.), 57 S. W. 22; *Commonwealth* v. *Standard Oil Company,* 101 Pa. St. 119; *Pennypacker* v. *Capital Insurance Co.,* 45 N. W. 408; *Hyde* v. *Goodnough,* 3 New York Court of Appeals, 266; *Gilchrist et al.* v. *Helena H. S. & S. R. Co.,* 47 Fed. 593.)

If there can be a doubt as to whether prior to the passage of House Bill 132 a domestic mining company might lawfully acquire, hold and vote the stocks of other corporations, the power to do so is clearly granted by that Act. By this act of legislation the state's consent to the exercise of the power is given. If objection to the exercise of the power can be made it must come from a non-assenting shareholder. But if a dissenting stockholder can point to some constitutional provision which clearly protects him against the provisions of this bill, he may certainly waive such protection and consent to a disposition of the property under the terms of the bill. (Cooley's Const. Lim. (6th Ed.) 214, 213; Am. & Eng. Ency. of Law (2d Ed.), Vol. X, 1144; *Webster* v. *Kansas City, etc. R. Co.,* 116 Mo. 114; See also *Dunn* v. *City of Great Falls,* 13 Mont. 63, 31 Pac. 1017; *People ex rel. Haden* v. *City of Rochester,* 50 N. Y. 525.)

As to the power of the legislature to authorize a pre-existing corporation to make such use of its assets as against the dissent of a shareholder, we entertain no serious doubt in view of the terms of Section 466, Compiled Statutes of Montana, 1887, Fifth Division, reserving the right to alter, amend or repeal the act providing for the formation of corporations. (*Durfee*

v. *Old Colony, etc. R. R. Co. et al.,* 5 Allen, 240; *Looker* v. *Maynard,* 21 Sup. Ct. Rep. 23; *Sherman* v. *Smith,* 1 Black, 587; *Miller* v. *New York,* 15 Wall. 478; *Spring Valley Water Works* v. *Schlottler,* 110 U. S. 348; *Sinking Fund Cases,* 99 U. S. 720.)

A public policy to limit membership of domestic corporations or stockholding in the same to natural persons cannot be asserted in the face of legislation authorizing the holding of such stocks by corporations. (*Wehrhane* v. *N. C. & St. L. Ry. Co.,* 4 N. Y. Supp. 541 (N. Y. Sup. Ct. Gen. T.); *Branch* v. *Jessup,* 106 U. S. 468; *Williams* v. *Western Union Co.,* 93 N. Y. 162, 175-177; *Trans-Missouri Freight Ass'n,* 58 Fed. 69; *Swann* v. *Swann,* 21 Fed. 301; *Vidal* v. *Girard's Ex'rs,* 2 How. 127; *Cross* v. *U. S. Trust Co.,* 131 N. Y. 330, 334; *Bush* v. *D. L. & W. R. R. Co.,* 116 N. Y. 210, 220.)

The plaintiff cannot object merely upon the ground that the acquisition of the stock by the Amalgamated Copper Company was *ultra vires* of that corporation, or that the public policy of this state does not permit a domestic or foreign corporation to acquire, hold and vote the stocks of domestic companies. (*Oelberman* v. *New York & N. R. Co.,* 27 N. Y. Supp. 945; *Farwell & Co.* v. *Wolf* (Wis.), 70 N. W. 289; *Bank* v. *Butler,* 157 Mass. 518; *Grant* v. *Coal Co.,* 80 Pa. St. 208; *Mining Co.* v. *Clarkin,* 14 Cal. 544; *Alexander* v. *Tolleston Club,* 110 Ill. 65; *Fritts* v. *Palmer,* 132 U. S. 282, 10 Sup. Ct. 93; *Runyan* v. *Coster,* 14 Pet. 122; *Bank* v. *Whitting,* 103 U. S. 99; *Shewolter* v. *Pirner,* 55 Mo. 218; *Ragan* v. *McElroy,* 98 Mo. 349, 11 S. W. 735; *Bank* v. *Matthews,* 98 U. S. 621; *Martindale* v. *Railroad Co.,* 60 Mo. 508; *Kinealy* v. *Railway Co.,* 69 Mo. 658; *Hovelman* v. *Railroad Co.,* 79 Mo. 632; *Baker* v. *Loan Co.,* 36 Minn. 185, 30 N. W. 464.)

Plaintiff has no right to an injunction against the payment of dividends. (*Millbank* v. *N. Y. etc. Ry. Co.,* 64 How. Pr. 20; *Bigbee & W. R. P. Co.* v. *Moore,* 25 Southern Rep. 602; *Holmes & Griggs Mfg. Co.* v. *Holmes, etc. Co.* (N. Y.), 27 N. E. 831.)

*Mr. John J. McHatton,* for Respondent.

The corporations in which respondents are stockholders were organized under the laws of the state of Montana; the law, as it existed at that time, became part of the contract which was entered into; this contract was binding between the stockholders as among themselves, between the stockholders and the corporation, and between the corporation and the state. (*Natusch* v. *Irving* (Tenn.), 2 Coop. Ch. 358; *Livingston* v. *Lynch* (N. Y.), 4 Johns. Ch. 573; *Morawetz on Priv. Corp.* Sec. 644; *Union Lock & Canal Co.* v. *Towne,* 1 N. H. 44; *Kean* v. *Johnson,* 9 N. J. Eq. 407; *People* v. *Ballard,* 134 N. Y. 269; *Mills* v. *Central R. Co.,* 41 N. J. Eq. 1; *Mason* v. *Pewabic Min. Co.,* 133 U. S. 50; *Morawetz on Priv. Corp.* Secs. 415, 417, 441, 442, 443; *Franklin Bank* v. *Commercial Bank,* 36 Ohio St. 350; *Cook on Stock and Stockholders,* Sec. 315; *Botts* v. *Simsonville, etc. Turnpike Co.* (Ky.), 2 L. R. A. 594.)

One corporation cannot consolidate with another without the consent of its stockholders. (*Morawetz on Priv. Corp.* Secs. 396, 645, 646, 940, 942, Subd. 2; *Thompson on Corp.* Secs. 324, 325; *Cook on Stock and Stockholders,* Sec. 668; *Mayor, etc.* v. *Knoxville & O. R. Co.,* 22 Fed. 758; *Byrne* v. *Schuyler El. Mfg. Co.* (Conn.), 28 L. R. A. 304.)

The corporate and stockholder contract required the corporation to pursue its business and conduct its affairs in accordance with the laws of the state, for the purpose of carrying out the corporate enterprise. (*Morawetz on Priv. Corp.* Secs. 615, 617, 641, 642, 643; *Easun* v. *Buckeye Brewing Co.,* 51 Fed. 156; *Central. Transp. Co.* v. *Pullman Palace Car Co.,* 139 U. S. 24; *Thomas* v. *Railroad Co.,* 101 U. S. 71; *Oregon Ry. & Nav. Co.* v. *Oregonian R. Co.,* 130 U. S. 1; *De La Vergne, etc. Co.* v. *German Savings Institution,* 175 U. S. 40, 55; *Hamilton* v. *Savannah, etc. R. Co.,* 49 Fed. 412; *McCutcheon* v. *Merz Capsule Co.,* 71 Fed. 787, 31 L. R. A. 415; *Franklin Bank* v. *Commercial Bank,* 36 Ohio St. 350; *Mills* v. *Central R. Co.,* 41 N. J. Eq. 1.)

One corporation cannot purchase, acquire or hold stock in another. (Cook on Stock and Stockholders, Sec. 315; Thompson on Corp. Sec. 1102; *Byrne v. Schuyler Electric Mfg. Co.*, (Conn.) 28 L. R. A. 304; *People v. North River Sugar Ref. Co.*, 121 N. Y. 582, 9 L. R. A. 33; *Memphis & Charleston R. Co. v. Woods* (Ala.), 7 L. R. A. 605; *Central R. Co. v. Collins*, 40 Ga. 582; *Valley R. Co. v. Lake Erie Iron Co.* (Ohio), 1 L. R. A. 412; *Holmes, etc. Mfg. Co. v. Holmes, etc. Metal Co.*, 127 N. Y. 252; *Buckeye Marble & Freestone Co. v. Harvey* (Tenn.), 18 L. R. A. 252; Green's Brice's *Ultra Vires*, 91; *First Nat'l Bank v. Nat'l Exch. Bank*, 92 U. S. 122; *California Nat'l Bank v. Kennedy*, 167 U. S. 362, 367; *Concord First Nat'l Bank v. Hawkins*, 174 U. S. 364, 367; *Pauly v. Coronado Beach Co.*, 56 Fed. 428.)

Equity will protect the minority stockholder, and the majority stock cannot be used, against the interests of the corporation, to control it through another. (*Farmers' Loan & Trust Co. v. New York & Northern R. Co.*, 150 N. Y. 410, 34 L. R. A. 76.)

A stockholder has a right in equity as against *ultra vires* acts. (*Zabriskie v. Cleveland, C. & C. R. Co.*, 23 How. 381; *Forrester et al. v. Boston & Montana, etc. Co.*, 21 Mont. 544; *Peabody v. Flint* (Mass.), 6 Allen, 52; *March v. Eastern R. Co.*, 40 N. H. 548; *State v. Standard Oil Co.* (Ohio), 15 L. R. A. 145; *Memphis & Charleston R. Co. v. Woods*, 88 Ala. 630, 7 L. R. A. 605; *Moses v. Thompkins*, 84 Ala. 613; Morawetz on Priv. Corp., Sec. 1042; *Byrne v. Schuyler Electric Mfg. Co.* (Conn.), 28 L. R. A. 304; *Kean v. Johnson*, 9 N. J. Eq. 407.)

"There can be no injury but there must be a remedy." Lord Hardwicks, justly called "Father of Equity," gave expression to this principle in *The Charitable Corporation v. Sir Robert Sutton, etc.*, Case 269, 2d Atkyns, 400, *et seq.*

A director of a corporation is the agent and trustee of the stockholders and, as such, has duties to discharge of a fiduciary nature towards his principal. (*Cumberland Coal Co. v. Sherman* (N. Y.), 30 Barb. 553, and cases cited; *Hoyle v. Plattsburgh, etc. R. Co.*, 54 N. Y. 314; *Guild v. Parker, Receiver,*

*etc.,* 14 Vroom. 430; *Bosworth* v. *Allen,* 168 N. Y. 157; *Ex parte Bennett,* 18 Beavan, 339, affirmed 24 L. J. Ch. 130; 1 Blackstone Comm. 477; *Attorney General* v. *Utica Ins. Co.,* 2 Johns. Ch. 371; *Thomas* v. *Brownville, etc. R. Co.,* 109 U. S. 522.)

The directors of a company cannot avail themselves of their position to enter into beneficial contracts with the company, nor can they buy property and sell it to the company at an advanced price. (*Parker* v. *Nickerson,* 112 Mass. 195; *Davoue* v. *Fanning,* 2 Johns. Ch. 252; *Green* v. *Roworth,* 113 N. Y. 462; *Barnard* v. *Gantz,* 140 N. Y. 249.)

The majority stockholders cannot manipulate the company's business in their interests, to the injury of the other stockholders. (*Meeker* v. *Winthrop Iron Co.,* 17 Fed. 48.)

Directors may not fraudulenty or collusively perform acts destructive of the rights of the stockholders. (*Hennessy* v. *Muhleman,* 54 N. Y. Supp. 854; *Watkins* v. *Watkins, etc. Co.,* 40 N. Y. Supp. 1042.)

Equity regards a stockholder as the equitable owner of an individual fractional part of the entire assets of the corporation. (*Flynn* v. *Brooklyn City R. Co.,* 158 N. Y. 493, 504, 508; *Rich* v. *New York Central, etc. R. Co.,* 87 N. Y. 382, 398; *Buffalo, etc. Co.* v. *Medina Gas, etc. Co.,* 162 N. Y. 67; *Saranac, etc. R. Co.* v. *Arnold,* 167 N. Y. 368.)

The fact that a stockholder owns but a small portion of stock will not stand in the way of his asking and receiving remedial justice, where it appears he has suffered, or is about to suffer, an injury. The right of one stockholder is as great as many. (*Nash* v. *Hall Signal Co.,* 11 Misc. 468, affirmed 90 Hun. (N. Y.) 354; Cook on Corp. (4th Ed.), Chap. XLV, para. 735, *et seq.,* p. 1597, and cases cited in note.)

Where two corporations, under the same control, are conducted by the control in such manner as to sacrifice the interests of one corporation to advance those of the other, a minority stockholder of the corporation damnified is entitled to equitable relief against the situation. (*Gamble* v. *Queens County Water*

Co., 123 N. Y. 91; Cook on Stock and Stockholders, 642, 643, 648, 662; *Jacobus* v. *American Min. Water Co.,* 77 N. Y. Supp. 898.)

Directors who have violated their obligations and duties as such and mismanaged the corporation of which they are officers are liable to the corporation for breach of the trust. (*Farmers' Loan & Trust Co.* v. *New York & Northern R. Co.,* 150 N. Y. 410; *De Neufville* v. *New York & N. Ry. Co.,* 81 Fed. 10.)

The owner of one share of stock is to be protected by a court of justice equally with the owner of a thousand shares. (Cook on Corp. (4th Ed.), para. 735, p. 1597; *Bacon* v. *Robertson,* 18 How. 480.)

A shareholder has a right to bring an action to protect his equitable interests, and his motive in so doing is immaterial, nor need his holding be large in proportion to the total stock. (*Coleman* v. *Eastern Counties R. Co.,* 10 Beavan, 1; *Occum Co.* v. *Sprague Mfg. Co.,* 34 Conn. 529; *Camden, etc. R. Co.* v. *Elkins,* 37 N. J. Eq. 273; *Ramsey* v. *Gould* (N. Y.), 57 Barb. 398, 400; *Hanchett* v. *Chiatovich,* 101 Fed. 742, 746; *Guardian Trust Co.* v. *White Cliffs, etc. Co.,* 109 Fed. 523, 530; *Johnson* v. *Langdon,* 135 Cal. 624, 67 Pac. 1050; *Carson* v. *Iowa City Gaslight Co.* (Iowa), 45 N. W. 1068; Cooley on Torts, p. 688; *Jenkins* v. *Fowler,* 24 Pa. St. 308; *Masey* v. *Childress,* 2 Tenn. Ch. 442; *Heywood* v. *Tillson* (Me.), 46 Am. Rep. 373; *Jacobson* v. *Van Boening* (Neb.), 66 N. W. 993; 27 Am. & Eng. Ency. of Law, p. 400; *Bloxam* v. *Metropolitan R. Co.,* L. R., 3 Ch. 337; Morawetz on Priv. Corp., Secs. 259, 266; *Bordeaux* v. *Greene,* 22 Mont. 254.)

The complainants acquired the rights of the former holders of the stock. (*Windsor* v. *Bailey,* 55 N. H. 218.)

These corporations were formed under Section 446 of the Fifth Division, General Laws of 1887. The common law was in force at that time, except as modified by statute. The statute authorized the incorporation and limited the powers of a corporation. The common law rule applicable to the subject must, therefore, control in the determination of whether or not the

Amalgamated Copper Company has any right to own stock in these corporations. (*Forrester* v. *B. & M. etc. Co.*, 21 Mont. 556-7; *B. & B. Co.* v. *M. O. P. Co.*, 25 Mont. 41.)

A majority of a corporation's stockholders and its directors can only act for the purpose of carrying out the corporate enterprise. (Morawetz on Priv. Corp. Sec. 641, 642, 615, 617, 643; *Franklin Bank* v. *Commercial Bank*, 36 Ohio St. 350; *Central Transp. Co.* v. *Pullman Palace Car Co.*, 139 U. S. 24; *Mills* v. *Central R. Co.*, 41 N. J. Eq. 1; *State* v. *Central Ry. Co.*, 35 S. E. 37; *Hamilton* v. *Savannah R. Co.*, 49 Fed. 412; *American Preservers' Trust* v. *Taylor Mfg. Co.*, 46 Fed. 152; *State* v. *Nebraska Distilling Co.* (Neb.), 46 N. W. 155.)

One corporation cannot surrender control to another, even with the consent of its stockholders, and such other corporation may be enjoined from interfering with it. (*McCutcheon* v. *Merz Capsule Co.*, 71 Fed. 787, 31 L. R. A. 419; *People* v. *North River Sugar Refin. Co.*, 121 N. Y. 608, 9 L. R. A. 33; *Case with same title*, 2 L. R. A. 33; *Memphis & Charleston R. Co.* v. *Woods* (Ala.), 7 L. R. A. 605; *Central R. Co.* v. *Collins*, 40 Ga. 582; *Valley R. Co.* v. *Lake Erie Iron Co.* (Ohio), 1 L. R. A. 412.)

The purchase of shares of stock by one corporation in another is *ultra vires* and utterly void. It gives no right whatever. (*Buckeye Marble & Freestone Co.* v. *Harvey* (Tenn.), 18 L. R. A. 252; *First Nat'l Bank* v. *Nat'l Exch. Bank*, 92 U. S. 122; *Concord First Nat'l Bank* v. *Hawkins*, 174 U. S. 367; Green's Brice's *Ultra Vires*, 91; *State* v. *Standard Oil Co.* (Ohio), 15 L. R. A. 145.)

The state or the attorney general may maintain an action in equity for an injunction against a corporation or its officers who are exceeding the corporate authority. (*Louisville & N. R. Co.* v. *Com.*, 97 Ky. 675, s. c. affirmed 161 U. S. 677; *Attorney General* v. *Chicago, etc. Ry. Co.*, 35 Wis. 425; *Attorney General* v. *Delaware, etc. R. Co.*, 27 N. J. Eq. 631; *Stockton* v. *Cent. R. Co.* (N. J.), 17 L. R. A. 97; *Thomas* v. *West Jersey R. Co.*, 101 U. S. 71; Pomeroy's Eq. Jurisp. 1093.)

The minority stockholder may maintain an action for injunction.  (*Memphis & Charleston R. Co.* v. *Woods* (Ala.), 7 L. R. A. 605; *Parsons* v. *Tacoma Smelt. & Ref. Co.* (Wash.), 65 Pac. 765; *Farmers' Loan & Trust Co.* v. *New York & Northern R. Co.,* 150 N. Y. 410, 34 L. R. A. 76; *Ervin* v. *Oregon Ry. & Nav. Co.,* 27 Fed. 625; *Stevens* v. *Rutland R. Co.,* 29 Vt. 550; *Kean* v. *Johnson,* 9 N. J. Eq. 401; *Botts* v. *Simsonville, etc. Turnpike Co.* (Ky.), 2 L. R. A. 594; *Forrester et al.* v. *Boston & Montana, etc. Co. et al.,* 21 Mont. 544.)

It not being within the capacity or authority of Montana corporations to hold or own stock in one another, the Amalgamated Copper Company could not, by virtue of the laws of its creation, do so, although the same assumed to invest it with such authority.  (Article XV, Sec. 11, of the Constitution of Montana; *Criswell* v. *Mont. Cent. Ry. Co.,* 18 Mont. 167, 171; *McCutcheon* v. *Merz Capsule Co.,* 71 Fed. 787; *Dayton C. & I. Co.* v. *Barton,* 22 Sup. Ct. Rep. 5.)

The public policy of the state is against the proposition of the appellants.  Whatever is against law is against public policy, and the ownership of shares of stock by one corporation in another is against the common law, the constitution and the statute.  A contract executed in one state will not be enforced in another if against public policy of the latter.  (*Palmer* v. *Palmer* (Utah), 72 Pac. 3, at page 6.)

House Bill 132 does not give the Amalgamated Copper Company the rights claimed for it, because it is opposed to the provisions of Section 20 of Article XV of the Constitution.  It will be noticed that that constitutional provision is not directed against trusts, but against "what is known as a trust."  The articles of incorporation of the Amalgamated Copper Company establish its nature sufficiently to make it obnoxious to the constitutional provision.  (Beach on Monopo. and Industrial Trusts, Secs. 167, 526, 527; *Bailey* v. *Association of Master Plumbers,* 52 S. W. 853; *U. S.* v. *Trans-Missouri Freight Ass'n,* 166 U. S. 290; *State* v. *Firemen's Fund Ins. Co.,* 52 S. W. 595; *Texas Brewing Co.* v. *Durrum,* 46 S. W. 880; *Buckeye Marble & Freestone Co.* v. *Harvey,* 20 S. W. 427.)

The public policy of this state will not permit the control of one corporation by another; especially is this true when a foreign corporation thus undertakes to control and swallow up a domestic one. (2 Thompson on Corp., Sec. 2071; *Clarke* v. *Central R. etc. Co.,* 50 Fed. 338; *Richardson* v. *Buhl,* 77 Mich. 632; *Pittsburg, etc. R. Co.* v. *Keokuk, etc. Co.,* 131 U. S. 389; *Hamilton* v. *Savannah, etc. R. Co.,* 49 Fed. 412, 422; *Pearsall* v. *Gt. N. Ry. Co.,* 161 U. S. 646; *Cal. Nat'l Bank* v. *Kennedy,* 167 U. S. 362; *People* v. *Chicago Gas Trust Co.,* 130 Ill. 275; *Merz Capsule Co.* v. *U. S. Capsule Co.,* 67 Fed. 414; *San Antonio Gas Co.* v. *State,* 54 S. W. 389; *State* v. *Portland Natural Gas Co.,* 53 N. E. 1091; *U. S.* v. *Northern Securities Co.,* 120 Fed. 721.)

The action by which the Amalgamated Copper Company claimed to acquire a majority of the stock of the Boston & Montana Company and the Butte & Boston Company was corporate action. (*People* v. *North River Sugar Ref. Co.* (N. Y.), 9 L. R. A. 33.)

The Amalgamated Copper Company acquired no right, because of the *ultra vires* of the transaction. (*De La Vergne, etc. Co.* v. *German Savings Institution,* 175 U. S. 40, 55.)

To warrant the control of one corporation by another, or the existence of any contract such as is claimed in the present case, it is necessary that both corporations have power. (*Camden, etc. R. Co.* v. *May's Landing, etc. R. Co.,* 48 N. J. Law, 559; *Thomas* v. *West Jersey R. Co.,* 101 U. S. 71; *Penn. R. Co.* v. *St. Louis, etc. R. Co.,* 118 U. S. 290, 309; *Central Transp. Co.* v. *Pullman P. Car Co.,* 139 U. S. 24; *Paul* v. *Virginia,* 8 Wall. 168; *White* v. *Howard,* 46 N. Y. 144; *Buckeye Marble & Freestone Co.* v. *Harvey* (Tenn.), 18 L. R. A. 252; Thompson on Corp. Sec. 2071; *McCutcheon* v. *Merz Capsule Co.,* 71 Fed. 787.)

The Amalgamated Copper Company, having, therefore, acquired no right, cannot exercise any authority. The minority stockholder, having the right to object, may have any remedy in equity which is necessary to be applied to protect his rights

and to maintain the individuality of the corporation in which he is a stockholder and to command the carrying out of its purposes by its individual stockholders. (Morawetz on Priv. Corp. 1042, and citations; *Zabriskie v. Cleveland, C. & C. R. Co.,* 23 How. 381; *Peabody* v. *Flint* (Mass.), 6 Allen, 52; *March* v. *Eastern R. Co.,* 40 N. H. 548, 77 Am. Dec. 732; *Miner* v. *Belle Isle Ice Co.* (Mich.), 17 L. R. A. 412, 417, approved in *State* v. *District Court,* 15 Mont. 324; *Byrne* v. *Schuyler Electric Mfg. Co.* (Conn.), 28 L. R. A. 304; *Forrester* v. *Boston & Montana, etc. Co.,* 21 Mont. 544.)

The minority stockholder may have an injunction against the voting of stock. (*Parsons* v. *Tacoma Smelt. & Ref. Co.* (Wash.), 65 Pac. 765; *Memphis & Charleston R. Co.* v. *Woods,* 7 So. 108, 7 L. R. A. 605; *Mackintosh* v. *Flint & P. M. R. Co.,* 34 Fed. 614; *Ervin* v. *Oregon Ry. & Nav. Co.,* 27 Fed. 625; *Central R. Co.* v. *Collins,* 40 Ga. 582; *Wilks* v. *Georgia Pac. R. Co.,* 79 Ala. 180; *Botts* v. *Simsonville, etc. Turnpike Co.* (Ky.), 2 L. R. A. 594; *Georgia* v. *Central Ry. Co.,* 14 So. 752; *Clarke* v. *Central R. etc. Co.,* 50 Fed. 338.)

MR. CHIEF JUSTICE BRANTLY, after stating the case, delivered the opinion of the court.

At the hearing in this court counsel for plaintiff interposed motions to dismiss both appeals on various grounds, among others, that the order of October 23d is not appealable, and that the notice is ambiguous and uncertain, in that it does not appear therefrom to which order it refers. There is no merit in the motion so far as it is directed at the appeal from the order of the court entered in the minutes granting the injunction. The notice is couched in separate paragraphs. By reading the first paragraph with each of the other two, there is a separate and distinct notice of each appeal, the notice being almost in the exact form of the one considered in *In re Barker's Estate,* 26 Mont. 279, 67 Pac. 941. It is a sufficient notice, for it is entirely clear that the respondent understood therefrom that the appellants intended to prosecute two appeals. The fact that

two separate notices were included in the same paper, though an appeal does not lie from one of the orders, does not affect the right of the appellant to prosecute an appeal from the one which is appealable. As to the appeal from that order, the motion is denied. The evident purpose of the district judge in signing the order, and filing it with the record on October 23d, was that this order should be the injunction, which in form and substance it is, except that it is signed by the district judge. It was intended to perform the office of process, to carry into effect the order of the previous day. No appeal lies from an injunction, and the motion as to this appeal is sustained.

Counsel in their briefs have presented and argued many questions which are not pertinent in any manner to this investigation. Much of the appellants' brief is devoted to an argument to show that the district court had no jurisdiction of the Amalgamated Company, because it had never been served with process nor had appeared in the action. It is not necessary to consider the question thus presented, because, if the district court had no jurisdiction of the Amalgamated Company by service of process, that company is not aggrieved by the order. If it had jurisdiction, and the Amalgamated Company is aggrieved by the order, it took no appeal, and can obtain no relief from this court, except so far as the relief granted to the appealing defendants may incidentally affect its rights.

Much argument in the appellants' brief is also devoted to the questions whether or not the Amalgamated Company is engaged in doing business in this state in violation of the law, and whether it is a monopoly and subject to the prohibition contained in Section 20 of Article XV of the Constitution, and the penalties provided by Section 321 of the Penal Code.

The plaintiff sues as a private citizen. He is not, as such, authorized to present, through the medium of a civil action, and try the issue, whether the defendant Amalgamated Company is doing business in this state in violation of a law. A determination of this issue as an independent ground of relief must be had, if at all, by the state, and in its own behalf,

through the attorney general. It is no concern of the plaintiff if the state neglects or waives its right to call the defendant to account. In general, the same may also be said as to the issue whether the combination formed by the defendant Amalgamated Company, through its officers and the stockholders of the Montana Company and the other corporations, is a monopoly and in violation of the Penal Code of the state, rendering the defendant Montana Company liable to punishment and a forfeiture of its franchises and property. (Cook on Corporations, Sec. 632; *Coquard* v. *National Linseed Oil Co.,* 171 Ill. 480, 49 N. E. 563; *Stewart* v. *Erie, etc. Transportation Co.,* 17 Minn. 372 (Gil. 348); *City of Grand Rapids* v. *Grand Rapids Hydraulic Co.,* 66 Mich. 606, 33 N. W. 749.) Nor do we know of any provision of law authorizing a court of equity, at the instance of a minority stockholder, to decree a forfeiture of the stock of any stockholder in the same corporation to the corporation, on the ground that the title of such stockholder has been acquired and is held in violation of the charter of the corporation.

Nevertheless, so far as the participation of the Montana corporation and its officers in an unlawful combination to create a monopoly subjects its property and franchises to forfeiture, and thus imperils the property rights of the minority stockholder, he has a cause of complaint against it and them, and may, through the medium of a court of equity, compel it and them to abandon such unlawful connection and return to a performance of their obligations under the charter contract of the company, to-wit, to accomplish, through its board of directors, the purpose for which it was formed, and by lawful means. The officers of a corporation are trustees; by their acts in engaging in an unlawful enterprise, and making the corporation a party to it, they are guilty of a breach of trust, and both they and the corporation can be held to account by a court of equity, at the suit of a minority stockholder who has not participated in the violation of the law. (Cook on Corporations, Secs. 646, 647; *Forrester et al.* v. *B. & M. C. C. & S. M. Co.,* 21 Mont. 544, 55 Pac. 229, 353.)

The propriety of the action of the district court in granting the preliminary injunction, therefore, depends upon a solution of two fundamental questions, to-wit: Did the transaction by which the Amalgamated Company acquired a majority of the shares in the Montana Company have for its purpose, or result in, the formation of a trust within the meaning of the sections of the Constitution and the Penal Code referred to; and, if not, is it in violation of the rights of the plaintiff for the Amalgamated Company to own and vote shares of stock in the Montana Company, so long as its power is not used to the detriment of plaintiff? An affirmative answer to either of these questions will require an affirmance of the order.

The Amalgamated Company was organized under the laws of the state of New Jersey on April 27, 1899, the charter designating its principal office in Jersey City. The incorporators were persons intimately associated with the authorities of the Montana Company. Its powers and objects are very extensive. It has the power, among other things: "(1) To carry on the business of mining, milling, concentrating, converting, smelting, treating, preparing for market, manufacturing, buying, selling, exchanging, and otherwise producing and dealing in gold, silver, copper, metals and minerals, and in the products and byproducts thereof of every kind and description, and by whatsoever process the same can be or may be hereafter produced; and generally and without limit as to amount, to buy, sell, exchange, lease, acquire and deal in lands, mines and minerals, rights and claims and in the above specified products, and to conduct all business appurtenant thereto. * * * (8) To purchase, subscribe for or otherwise acquire, and to hold the shares, stocks or other obligations of any company organized under the laws of this state, or of any other state, or of any territory or colony of the United States, or of any foreign country, and to sell or exchange the same, or upon a distribution of the assets or division of profits, to distribute any such shares, stocks or obligations or the proceeds thereof amongst the stockholders of this company." Its capital stock was originally $75,000,000.

At the time the hearing under the order to show cause was had, it had acquired all the stock in the Washoe Company, the Big Blackfoot Milling Company, and a majority of the shares in the following companies: The Anaconda Copper Company, the Parrot Silver & Copper Mining Company, and the Hennessy Mercantile Company—all Montana corporations. These stocks had been acquired prior to June, 1901. To these may be added the Montana Company and the Butte & Boston Company. In brief, the negotiations by which the shares of these latter companies were acquired are the following: On or about April 15, 1901, the directors of the Montana Company received a proposition from Kidder, Peabody & Co., bankers, of Boston, Mass., that they would undertake to negotiate an exchange of shares held by the stockholders of that company, to the amount of at least 100,000 shares, for shares of the Amalgamated Company, upon some equitable basis. Pending negotiations, the shares of the Montana Company were to be deposited in the bank and negotiable receipts issued therefor. If the exchange should be effected, each depositor was to receive a negotiable receipt for the number of shares of the Amalgamated Company he would be entitled to. If not satisfied with the result of the negotiations, each depositor was to have the option either to take $375 per share in money for his certificates, or to withdraw them altogether. It was further stated that Kidder, Peabody & Co. would reserve the right to return all stock deposited, unless within seven days after April 25th they were prepared to submit a satisfactory offer for the exchange. Deposits were to be made on or before April 25th. This proposition was at once communicated by the directors of the Montana Company to the individual stockholders of that company, with the statement that all the officers, directors and large stockholders had agreed to make the deposit under the prescribed conditions. The negotiations thus begun were delayed from time to time. Like negotiations were begun at the same time with the directors and stockholders of the Butte & Boston Company, it being the wish of the Amalgamated Company not to acquire an interest in either company unless it could obtain a majority of the

stock in each of them. Finally an agreement was reached for a satisfactory basis of exchange. On June 6, 1901, the Amalgamated Company, at a meeting of its board of directors called for that purpose in Jersey City, N. J., increased its capital stock to $155,000,000 in order to effect the exchange. This exchange was accomplished in the latter part of June. The increase of the capital stock of the Amalgamated Company had been authorized at a stockholders' meeting of the company held in the city of New York on May 22d. The basis of the exchange finally agreed upon was 1 share in the Montana Company for 5 1-3 shares in the Amalgamated Company, and 1 share in the Butte & Boston Company for 1 1-3 shares. The estimated value of the properties belonging to the two Montana corporations was fixed by engineers employed to examine them at $75,000,000 to $80,000,000, while the market value of their combined stocks was estimated at $90,000,000. The result was that the Amalgamated Company acquired 147,915 shares of a total of 150,000 in the Montana Company, and 197,222 shares of a total of 200,000 in the Butte & Boston Company, thus giving the former complete control of the latter.

To go back for a moment in the order of events. Early in January, 1899, an agreement had been entered into between a number of the stockholders of the Montana Company and a committee consisting of Albert S. Bigelow, Edward C. Perkins and Sidney Chase, the first two being directors of the Montana Company, under the terms of which the stockholders were to and did deposit with the State Street Trust Company, a Massachusetts corporation, for safe keeping, their shares of stock in order to concentrate their power and effect an organization for the purpose of protecting the properties of the company from ruinous and groundless litigation which had, as was stated in the agreement, arisen in the courts of Montana. The Massachusetts corporation was a party to the agreement, but only for the purpose of acting as trustee. The members of the committee were, by the terms of the agreement, constituted sole agents and attorneys for the depositing stockholders. They were empowered by a majority to act for the stockholders in any man-

ner deemed necessary to carry out the purposes of the trust. They could bring, prosecute and defend suits, or compromise or continue them, or take any step in connection with them deemed advisable by counsel. They could vote all shares of the stock held in trust at all stockholders' meetings, either as a committee or through one of the members authorized to do so. They could assent to a dissolution of the corporation and the disposition of its property. The agreement could be terminated at any time at the discretion of the committee. This committee is referred to by some of the witnesses as the "protective committee."

The foregoing partial synopsis of the agreement sufficiently indicates its nature and purposes, and the extensive powers it conferred upon the committee. It does not distinctly appear from the evidence that the committee had anything to do with the organization of the Amalgamated Company, but the intimate connection shown to exist between it and the Amalgamated Company is made manifest by the statement of the secretary and treasurer of the Amalgamated Company, contained in his deposition used at the hearing, that, though the acquired stock is owned by the Amalgamated Company, it is in fact held by the committee, while the company holds the certificates of deposit issued by the committee. What other agreement there was, if any, does not appear. Nor does it appear, except indirectly, that one of the purposes of the organization of the Amalgamated Company was to acquire the stock of the Montana Company. From the facts stated, however, it would seem that the committee was merely an instrumentality devised to secure some sort of organization or combination of the interests of the Montana corporations, including the Montana Company, which finally culminated in the organization of the Amalgamated Company; for most of the persons engaged in the promotion of the scheme were officers and stockholders of the Montana corporations.

But be this as it may, all the corporations of which the Amalgamated Company has secured control, except the milling and

mercantile companies, are engaged in the business of mining copper and other ores and marketing the product. It is not unreasonable to presume that it is a holding corporation, one design of it being to secure harmony among the servient companies.

We thus have a combination of corporations, the dominant one of which is subject only to the laws of New Jersey, while the servient bodies were all organized and are subject to the laws of the state of Montana. Does this combination fall within the prohibition of the Constitution and of the Penal Code, *supra?*

The Constitution declares: "No corporation, stock company, person or association of persons in the state of Montana, shall directly, or indirectly, combine or form what is known as a trust, or make any contract with any person, or persons, corporations or stock company, foreign or domestic, through their stockholders, trustees, or in any manner whatever, for the purpose of fixing the price, or regulating the production of any article of commerce, or of the product of the soil, for consumption by the people. The legislative assembly shall pass laws for the enforcement thereof by adequate penalties to the extent, if necessary for that purpose, of the forfeiture of their property and franchises, and in case of foreign corporations prohibiting them from carrying on business in the state." (Section 20, Article XV.)

The Penal Code re-enacts the substantive part of this section, and provides penalties for its violation and for other offenses. It is as follows: "Every person, corporation, stock company or association of persons in this state who, directly or indirectly, combine or form what is known as a trust, or make any contract with any person or persons, corporations or stock companies, foreign or domestic, through their stockholders, directors, officers, or in any manner whatever, for the purpose of fixing the price or regulating the production of any article of commerce, or of the product of the soil for consumption by the people, or to create or carry out any restriction in trade, to

limit productions, or increase or reduce the price of merchandise or commodities, or to fix a standard or figure whereby the price of any article of merchandise, commerce or produce, intended for sale, use or consumption, will be in any way controlled, or to create a monopoly in the manufacture, sale or transportation of any such article, or to enter into an obligation by which they shall bind others or themselves not to manufacture, sell or transport any such article below a common standard or figure, or by which they agree to keep such article or transportation at a fixed or graduated figure, or by which they settle the price of such article, so as to preclude unrestricted competition, is punishable by imprisonment in the state prison not exceeding five years, or by fine not exceeding ten thousand dollars, or both. Every corporation violating the provisions of this section, forfeits to the state all its property and franchises, and in case of a foreign corporation it is prohibited from carrying on business in the state." (Section 321.)

Article XV, *supra,* deals generally with the rights and powers of corporations and associations of persons exercising any of the powers and privileges not possessed by individuals or partnerships, and their duties and purposes. It is prohibitory and restrictive in its general scope and purpose, the design of the convention in adopting its provisions being to prevent combinations to restrict or repress competition in all industrial pursuits, and to protect the people in general, and the employes of a certain class, against both the legislature and combinations of capital, from unjust impositions. Certain combinations and consolidations are prohibited altogether, as having a necessary tendency to restrict competition, such as consolidation, by purchase or otherwise, by one railroad or other transportation company, with another having a competing line (Section 6), or the control of a telephone or telegraph company by another competing company (Section 14). Apart from these prohibited combinations, the right of consolidation by corporations or associations engaged in these particular pursuits is not prohibited. Nor are such combinations, either of corporations or individuals, engaged in other pursuits prohibited, except as provided in Sec-

tion 20. Section 15 declares that any combination or consolidation by a domestic corporation with one organized under the laws of another state or country shall not result in depriving the courts of this state of jurisdiction over the property of such corporations in this state. Apart from these wholesome restrictions and prohibitions, the right of the people to accumulate property and to hold and enjoy it, either by individual effort or by means of associations of natural or artificial persons, is not restricted.

Section 20 prohibits any combination or contract which has a particular purpose, to-wit, "fixing the price or regulating the production of any article of commerce, or of the product of the soil, for consumption by the people." The terms "combine" and "form a trust" were evidently intended to be read in connection with the expression "for the purpose," etc., clearly implying that, in order to subject offenders to the severe penalties which the legislature might impose, there must be shown a specific intent to do the prohibited act, or that the association or combination necessarily tends to accomplish the same result. That this is the meaning is clear from the enumeration of persons who may not do the prohibited acts. Corporations, stock companies, natural persons, or partnerships are all included. If the criminal intent is not a necessary ingredient of the evil denounced, then all sorts of combinations are to be deemed prohibited, even ordinary copartnerships, as coming within the letter of the prohibition. For the terms "combine" and "form a trust" are of equal dignity. If the former is to be regarded as modified and explained by the clause "for the purpose," etc., by the same rule must the latter also.

The term "trust," if assigned the meaning given to it by the text-writers (Cook on Corporations, Sec. 503a; Spelling on Trusts, Sec. 121), includes any form of combination between corporations, or corporations and natural persons, for the purpose of regulating production and repressing competition by means of the power thus centralized. It was first used in a narrower sense, we believe, of an organization formed by a combination of several corporations under one direction, by the de-

vice of a transfer by the stockholders in each corporation of a majority of the stock to a central committee, who issued to the stockholders in return certificates showing, in effect, that, though they had parted with their stock, they were still entitled to share in the profits, the purpose being to control competition in production and transportation, and thus the price to the consumer. If it be construed as equivalent to the term "combination" or "consolidation," the meaning of the section is perfectly clear. If used in the sense of the definition given it by the text-writers, it is none the less clear, though it involves a repetition of the same idea, since the definition includes the idea of criminal purpose, and makes it a necessary ingredient of the offense denounced.

The section of the statute quoted involves the same idea and demands the same construction, though it is more specific in its provisions, and extends to and includes combinations in restraint of competition in transportation. It denounces every form of combination or contract which has for its purpose, directly or indirectly, the restraint of production or trade in any way or manner, or the control of the price of any article of consumption by the people. It was not the purpose of the convention, or of the legislature, to limit either the term used in the constitution, or in the statute, by any narrow definition, but to leave it to the courts to look beneath the surface, and, from the methods employed in the conduct of the business, to determine whether the association or combination in question, no matter what its particular form should chance to be, or what might be its constituent elements, is taking advantage of the public in an unlawful way. (*Harding* v. *American Glucose Co.*, 182 Ill. 551, 55 N. E. 577, 74 Am. St. Rep. 189.) In each case, therefore, under these provisions, the nature of the arrangement or combination is a question of fact to be determined by the court from the evidence before it, or from the vice which inheres in the contract itself.

The facts in the record before us, tending to show the purposes and methods of the Amalgamated Company and associate corporations, do not justify the conclusion that the combination

involves a criminal intent to evade or transgress the provisions of law which have been considered. Witnesses, who took part in the organization of the Amalgamated Company and the acquisition of the stock in question, and who are officers of the Amalgamated Company as well as of some of the Montana corporations, stated that the exchange of stock was for the purpose of investment only; that, apart from a solicitude concerning the success and prosperity of the Montana Company and the other servient corporations, they have taken no interest in their affairs, nor attempted in any way to control their business, and that each of them has been allowed to pursue independently the purpose for which it was organized, and to market its own product. Whatever doubt there may be as to the candor and truth of these professions, it does not appear that the combined companies entered into any agreement to control, or have controlled, or attempted to control in any way, the transportation or the price of copper or any by-product of the business, or to regulate the amount of production. Nor does it appear that they have attempted to affect in any way the wages of their employes. The total product of copper in the United States during the jear 1901, for example, was approximately 500,000,000 pounds; Montana properties produced about 210,000,000 pounds of this output. The out put of the associated companies ,was approximately 150,000,000 pounds, the remainder of the total being the product of other mining companies not associated with them. While the associated companies are thus shown to have produced about three-fourths of the whole product of this state, and nearly one-third of the product of the United States, the price persistently decreased from 16¼ cents per pound early in 1901 to 10 cents in the latter part of that year, and has fluctuated since that time, never rising higher than 15 cents. The dividends of all companies engaged in the industry have persistently declined in value owing to the decline in the price of the product, though the amount produced has remained substantially the same. Yet there is nothing to indicate that any of the associated companies have anything to do with these conditions. Indeed, the evidence tends to show that they

have been the result of natural causes, dependent upon the condition of the market, over which they have had no control. Nor is there any evidence that the Amalgamated Company has in any way attempted to use its power to discriminate in favor of or against any servient company to the advantage of itself or the detriment of any minority stockholders, or to affect competition with other companies. While the dominant company might, either by means of its superior position or other connections, perpetrate any of these wrongs, it does not appear to have done so, nor to have manifested any disposition to do so. Hence the evidence does not convict the Montana Company of such unlawful purpose, in connection with the Amalgamated Company, that it is liable for this reason to have its property and franchises forfeited at the suit of the state.

It is not every act of a corporation, though unlawful, that will give the minority stockholder therein a right of action against it. So far as he is not injuriously affected, directly or indirectly, he has no ground to complain, and, until it makes such connections or pursues such a course as to make it amenable to the law, he cannot be heard to question its action.

It is held by many courts that the mere possession of power by a combination of corporations or associations, or persons, to injuriously repress competition, to regulate production, and fix prices, is against public policy, and all such are by them declared illegal as against public policy. This is true of the Illinois Supreme Court, as will be found by an examination of *Harding* v. *American Glucose Co.*, 182 Ill. 551, 55 N. E. 577, 74 Am. St. Rep. 189. It is said in that case: "The material consideration in the case of such combinations is, as a general thing, not that prices are raised, but that it rests in the power and discretion of the trust or corporation taking all the plants of the several corporations to raise prices at any time, if it sees fit to do so." This case is typical of the class which hold to this doctrine. But an examination of them will reveal the fact that, in each particular case before the court for consideration, it appeared either from the fact proved or admitted, or from the

terms of the contract itself, that the defendants entertained and were pursuing the unlawful purpose. The manifest purpose of the constitution and the legislative utterances must be deemed controlling in this jurisdiction.

What we have said relates only to the evidence adduced at the hearing under the order to show cause. If upon the final hearing, after the issues are made up, it should be made to appear that the associated companies are proceeding in violation of the law, the district court would be justified in issuing a perpetual injunction to restrain the Montana Company and its directors from further participating in the unlawful connection. This case does not fall within the principle of *Forrester & MacGinniss* v. *B. & M. C. C. & S. M. Co.,* 21 Mont. 544, 55 Pac. 229, 353, as respondent contends.

The contention is made by the appellants that one corporation may own and vote stock in another corporation, provided its charter authorizes it to do so; that the Amalgamated Company has this power under its charter; that the laws of the state under which it was created authorizes such a grant; and that it has a right to own and vote stock in any Montana corporation, even though it was acquired for the purpose of controlling it; and that the injunction was not properly issued. The respondent admits that the Amalgamated Company is lawfully authorized by its charter to own and vote stock in any corporation, no matter where organized, but that it cannot exercise this power in Montana unless it is permitted to do so by express provision of law authorizing corporations of Montana to do the same thing. There is no such provision of law, counsel say, and therefore the exercise of this power contravenes the provision contained in Section 11 of Article XV of the Constitution, which denies foreign corporations the enjoyment, within this state, of "any greater rights or privileges than those possessed or enjoyed by corporations of the same or similar character created under the laws of the state."

We have, then, the Amalgamated Company, a corporation duly authorized by its charter, under the laws of New Jersey,

to hold and vote stock in other corporations, no matter where created. Do the laws of this state authorize mining companies organized in this state to own and vote stock in other mining corporations? If they do, it is not the duty of the board of directors to interfere with the exercise of that right by the Amalgamated Company, and the respondent may not compel them to do so, unless they are guilty of or permit abuses of their trust.

The general rule is that one corporation cannot hold or vote stock in another unless expressly authorized so to do by the terms of its charter or by a statute. This was formerly the rule in England (Green's Brice's *Ultra Vires,* 91); but it has been much relaxed by the later decisions, which recognize many exceptions (*Id.* 92, 93). The general rule prevails in the state and federal courts in this country. Iowa and Maryland are, possibly, the only exceptions. (*Latimer* v. *Citizens' State Bank,* 102 Iowa, 162, 71 N. W. 225; *White* v. *Marquardt & Sons,* 105 Iowa, 145, 74 N. W. 930; *Booth* v. *Robinson,* 55 Md. 419. The case of *Califoria Bank* v. *Kennedy,* 167 U. S. 362, 17 Sup. Ct. 831, 42 L. Ed. 198, is an example of the application of the rule. See, also, *Parsons* v. *Tacoma Smelting & Refining Co.,* 25 Wash. 492, 65 Pac. 765; *People ex rel. Peabody* v. *Chicago Gas Trust Co.,* 130 Ill. 268, 22 N. E. 798, 8 L. R. A. 497, 17 Am. St. Rep. 319, and cases cited; Thompson on Corporations, Sec. 1102; *People* v. *North River Sugar Refining Co.,* 121 N. Y. 582, 24 N. E. 834, 9 L. R. A. 33, 18 Am. St. Rep. 843; *Marble Co.* v. *Harvey,* 92 Tenn. 115, 20 S. W. 427, 18 L. R. A. 252, 36 Am. St. Rep. 71.)

This is but a corollary of the principle that, on grounds of public policy, a corporation can do no other act or make any contract that is not expressly or impliedly authorized by its charter, read in the light of the general provisions of law on the subject. The converse of the rule is also generally recognized, to-wit, that a corporation is the creature of law, and may do any act or enter into any contract expressly or impliedly authorized by its charter or the law of its creation.

The Montana Company was organized on June 21, 1887, under Section 446, Fifth Division, Comp. St. 1887,—

for the purpose of mining, milling, smelting, concentrating, buying and selling ores, and doing a general mining business in connection with such other business as might be useful or profitable, in the state of Montana. Its charter does not, nor did the statute at that time, expressly or impliedly permit it to own or hold stock in other corporations. Its powers were the same as those of like mining companies. Under the application of the general rule, probably no corporation of its character and purpose could hold stock in another. Neither, probably, could an industrial corporation, such as it is, have been organized under the statute *supra* with the power in question; for the enumeration therein of the purposes for which such corporations could be organized concludes with the general provision, "or of carrying on any other branch of business to aid in the industrial or productive interests of the country and the development thereof." The purposes specifically enumerated in this section would not authorize the creation of a corporation with the power to hold stock in another corporation. If the maxim *noscitur a sociis* be held to indicate the rule of construction applicable to the general clause, it is doubtful whether a corporation with such power was included. The territorial court impliedly held that this maxim is not applicable. (*Carver Mercantile Co.* v. *Hulme*, 7 Mont. 566, 19 Pac. 213.) But however this may be, and though this section was carried into the Code of 1895 (Civil Code, Sec. 411), the conclusion reached upon the question before us is determined by other provisions of the statute indicating the policy of the law towards mining corporations. Section 527 of this Code authorizes mining corporations organized under the laws of the territory and state of Montana, owning properties in the same vicinity, "to consolidate their capital stock, debts, property, assets and franchises in such manner and upon such terms as may be agreed upon by their board of directors," when authorized by a two-thirds vote of the stockholders. If such corporations may consolidate in any manner and upon any terms without restriction, they may proceed by conveying all their property to a corporation organized for that purpose, or by the purchase by one of the companies of stock of the others in whole or in part.

Again, the legislature of 1899 (Sess. Laws 1899, p. 113) enacted a law popularly known as "House Bill 132," entitled "An Act to enlarge the powers of mining corporations to dispose of, sell, lease, mortgage, exchange, or otherwise convey, all or any part of the property," etc. This Act in terms authorizes such corporations to sell or exchange any part of their property or assets to another corporation, domestic or foreign, for the whole or any part of the capital stock of another corporation, whether a mining corporation or not. This provision empowers such corporations to hold stock in others, at least of like character, and, necessarily, to vote it; for the unrestricted ownership of property by a person, whether natural or artificial, carries with it the right to its full use and enjoyment for all purposes for which it may be used or enjoyed.

It is therefore not against the public policy of the state for one corporation to hold and vote stock in another of like character. The provisions of the statutes *supra* are to be construed as amendments to the general laws authorizing the formation of corporations and defining their powers, within the purview of Section 11 of Article XV of the Constitution, *supra.* The public policy of the state varies from time to time. It is not to be measured by the private convictions or notions of the persons who happen to be exercising judicial functions, but by reference to the enactments of the lawmaking power, and, in the absence of them, to the decisions of the courts. When, however, the legislature has spoken upon a particular subject and within the limits of its constitutional powers, its utterance is the public policy of the state. (*United States* v. *Trans-Missouri Ass'n,* 166 U. S. 290, 17 Sup. Ct. 540, 41 L. Ed. 1007.)

The Constitution (Article XV, Sec. 15) does not prohibit consolidations. Its prohibition extends only to any device by which an attempt is made to deprive the state courts of jurisdiction. Section 527 of the Civil Code expressly authorizes consolidations of domestic corporations. House Bill 132, *supra,* impliedly authorizes them between domestic and foreign corporations, or, at least, goes to the extent of empowering one do-

mestic corporation to hold stock in another of a similar character.

But counsel for respondent say that these statutory provisions do not apply to the Montana Company, because as to it, at least, having been enacted after its organization, they impair the obligation of the corporation contract, and thus infringe upon the rights of the plaintiff. It may be conceded that, so far as they attempt to increase the powers of that corporation without consent of all of its stockholders, they may be violative of the constitutional prohibition. But this objection does not arise as to corporations formed since their enactment. The holding of stock in a corporation by one person or another does not affect the rights of any other stockholder so long as the purposes of the corporate body are carried out under its charter for the benefit and profit of all the stockholders alike, according to the best judgment of those who have the active management of its business, and so long as the transaction by which the stock was obtained does not violate any provision of the statute or of the constitution. (*Trust Co.* v. *Georgia,* 109 Ga. 736, 35 S. E. 323, 48 L. R. A. 520.) Whenever, in the conduct of the business, the purposes of the charter of the Montana Company are ignored and the rights of the minority stockholders are disregarded, the courts of this state have ample power by way of injunction, or a receivership if necessary, to compel it to observe its contract obligations with the state and stockholders, notwithstanding its connection with the Amalgamated Company.

It does not appear from any evidence in the case that the Amalgamated Company, by any act of control over the Montana Company, has affected in any way the rights of the plaintiff as a stockholder. On this branch of the case, therefore, the plaintiff has no cause of complaint.

Inquiry was made of one of the witnesses at the hearing as to the ownership of the shares of stock which are the foundation of this action. The inquiry was made in an attempt to show that the shares, though standing in the name of the plaintiff, are in fact owned by the Montana Ore Purchasing Company, a

rival corporation, and that the action cannot, therefore, be maintained by the plaintiff. When the issue is made, as in this case, as to the ownership of the subject of the controversy, it is competent for the defense, if they can, to show that the plaintiff is not in fact the owner of it; for the statute (Code of Civil Procedure, Sec. 570) declares that the action shall be prosecuted by the real party in interest. The inquiry should have been permitted. Generally speaking, the motives actuating the plaintiff do not, as contended by appellants, affect the merits of the action. One possessing a right may enforce it notwithstanding his motive may be evil. (*Phelps v. Nowlen,* 72 N. Y. 39, 28 Am. Rep. 93; *Bordeaux* v. *Greene,* 22 Mont. 254, 56 Pac. 218.) The motive may not, therefore, be the subject of inquiry, except when it may be ground for impeachment.

The order of the district court is reversed, and the cause is remanded for further proceedings.

*Reversed and remanded.*

(Submitted November 23, 1903.   Decided February 1, 1904.)

