[Civ. No. 1287. Fourth Appellate District.—April 28, 1934.]

THOMAS R. CATTON, Appellant, v. CLAUDE KERNS et al., Respondents.

RAYMOND R. SHAW, Appellant, v. CLAUDE KERNS et al., Respondents.

Gilbert H. Jertberg and M. G. Gallaher for Appellants.

Wakefield & Hansen and Conley, Conley & Conley for Respondents.

BARNARD, P. J.—These actions were brought to recover damages for injuries sustained by the respective plaintiffs as a result of being struck by an automobile owned by the defendant corporation and driven by the other defendant. On a former appeal judgments in favor of the defendants were reversed on account of an improper instruction given the jury (123 Cal. App. 94 [10 Pac. (2d) 1036]). A retrial before the court without a jury resulted in a judgment for the defendants in each case, the court finding that the defendants were free from negligence and that the respective plaintiffs were guilty of negligence which proximately contributed to their own injuries. Separate judgments were entered and, by stipulation, the cases have been consolidated on this appeal.

About 2 o'clock on the morning of January 1, 1930, the two appellants and their wives left the Sunnyside Country Club and drove westerly along the highway toward Fresno, the car being driven by the appellant Shaw. After proceeding about a mile and a half they decided to return to the club. The car was stopped and the two appellants got out and walked into a field on the north side of the highway while Mrs. Shaw took the wheel and turned the automobile around so that it faced in an easterly direction. She stopped the automobile about opposite the place where the appellants had left the road, the car facing slightly in a northeasterly direction and with its left front wheel past the middle of the highway. The appellants returned from the field and walked to the automobile. Just before they entered

the car, one of them said to the other, ''I want to tell you a story,'' and the two walked to a point slightly to the rear of the automobile and from one and a half to four feet north of the traveled portion of the highway where they engaged in conversation for about three minutes. Appellant Shaw testified that during that time they stood there talking; that the other appellant had his arm on his shoulder; that he was facing west with his back to any westbound traffic; that he knew that his car was back of him, standing at somewhat of an angle; that it was a clear night and the visibility was perfect; and that ''I didn't expect an automobile and I wasn't looking for one''. Appellant Catton testified that as he was talking to Shaw he saw the respondent's car coming down the highway; that this other car might have been a quarter of a mile away when he first saw it; that he did not look at it again nor pay any attention to it; that he knew that the Shaw car was between him and the other automobile and that it was headed slightly to the northeast; that he continued talking to Shaw; and that ''I didn't move. I stood in that position with this car coming west.''

Appellants first contend that it must be held, as a matter of law, that the respondents were negligent. It is argued that the driver of respondents' car failed to keep the same under proper control and to drive the same in a prudent manner since he proceeded when he must have been blinded by the lights of the other car, and that this case falls squarely within the rule laid down in *Hatzakorzian* v. *Rucker-Fuller Desk Co.*, 197 Cal. 82 [239 Pac. 709, 41 A. L. R. 1027]. In that case, a pedestrian on a highway was struck and the driver of the automobile in question testified that at the time his mind was not on the matter of whether or not he might overtake a pedestrian, and that he proceeded for a distance of between 150 and 200 feet while he was so blinded by the glare of approaching lights that he was unable to see any object on the highway. In the case now before us there is evidence that the respondent Kerns was proceeding westerly on this highway at a speed of from thirty to thirty-five miles an hour, that it appeared to him that the Shaw car was approaching him from the west, that as he proceeded he thought the other car headed over directly toward him, that he slowed down and pulled

over to the right, and that he "gave them all the road that was necessary". A man who was riding with him testified: "Well, the car was coming towards us, headed over towards the right-hand side of the road. Mr. Kerns turned gradually to the left, clearing the car by two or three feet, I imagine, and forced him over to the side of the highway. Just after we passed the car Mr. Kerns gave a sudden turn to the left and just after that something hit the side of the car." From other portions of the testimony of this witness it is apparent that his first use of the word "left" was an error, and he plainly testified that Kerns first pulled over to the right. The respondent driver testified that it appeared to him that the other car was moving and that it was coming at an angle over toward him; that he kept getting over to the right; that he first saw the appellants after he had passed through the beams of light from their car; that at this time they were twenty or thirty feet from him; that he pulled sharply to the left to avoid hitting them; that the side of his car struck them; that he stopped within twenty-seven feet of the point where they were standing; and that he was going less than fifteen miles an hour at the time he struck them. There is no evidence as to the distance which the respondents' car traveled while it was passing though the beams of light from the other car.

With the car parked at a slight angle across the highway and near the middle thereof, and in the middle of the night, the respondents' explanation of the manner in which the accident occurred is not an unreasonable one. This was an oiled road, the traveled portion thereof being about sixteen feet wide, and it cannot be said that, under such circumstances, a reasonable man would not pull over to the right and slow down in passing another car. That people would be standing just off the main traveled portion of the road and slightly to the rear of the parked car, for social purposes, at that hour of the night is a circumstance that may well have been unexpected. The position of the appellants on the road must be considered in connection with the position of their car, and many things in connection with the somewhat unusual circumstances affect the question as to whether the respondent driver was negligent, and whether his negligence, if any, was a proximate cause of the injuries to appellants. In our opinion, the entire situation presents

questions of fact, rather than of law, with respect to negligence on the part of the respondents. (*Skaggs* v. *Willhour*, 210 Cal. 524 [292 Pac. 649] ; *Morehead* v. *Roehm*, 118 Cal. App. 312 [4 Pac. (2d) 995].)

The only other point raised is that it must be held, as a matter of law, that the appellants were free from negligence. The appellants rely on certain cases to the effect that a pedestrian has the right to travel anywhere upon a highway and it is argued that it conclusively appears that they were standing in a place of safety and that, in standing where they stood, they were in the exercise of their lawful right to use that part of the highway. The appellants were not pedestrians at the time, and were not walking along the highway. One of them saw the approaching automobile, the other knew that his own car was parked at an angle near the middle of the road and that he was but a few feet away from it, and both were aware of the general circumstances which could reasonably be deemed sufficient to warn them of the possibility of danger. In view of the position in which their car was stopped it would be natural for an approaching driver to keep well to the right, in doing which he might easily get slightly off the oiled portion of the road. They assumed and maintained this position when some attention or use of care would have apprised them of its danger. Their right to use that particular spot on the road in that particular manner was not absolute, but was dependent upon existing conditions and a proper regard for the rights of others and for their own safety. It cannot be held as a matter of law that no duty rested upon them to exercise any care for their own protection and whether or not a degree of care was exercised which was reasonable at the time and place was, to say the least, a question of fact.

The judgment is affirmed.

Marks, J., and Jennings, J., concurred.