MILLS, PLAINTIFF, *v.* STATE BOARD OF EQUALIZATION ET AL., DEFENDANTS.

(No. 7,268.)

(Submitted April 7, 1934.   Decided May 12, 1934.)

[33 Pac. (2d) 563.]

*Mr. S. C. Ford* and *Mr. Wellington D. Rankin,* for Plaintiff, submitted a brief and argued the cause orally.

*Mr. Raymond T. Nagle,* Attorney General, and *Mr. Jeremiah J. Lynch,* First Assistant Attorney General, for Defendants, submitted an original and reply brief; *Mr. Lynch* argued the cause orally.

*Mr. E. G. Toomey, Amicus Curiae,* submitted a brief and argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This is an original proceeding brought by Robert M. Mills, a citizen and taxpayer of the state of Montana, the owner of real and personal property, and subject to and within the terms and provisions of Chapter 181, Laws of 1933, as amended by Chapter 40, Laws of the Extraordinary Session of the Twenty-third Legislative Assembly, against the State Board of Equalization and the members thereof, seeking to enjoin them from enforcing the provisions of these Acts as against the plaintiff and all other persons affected by the provisions of these laws.

The plaintiff alleges in his complaint that these Acts are invalid and void as being violative of certain provisions of both the state and federal Constitutions, which will presently be noticed. Also it is alleged that the defendant board is without authority to construe these enactments retrospectively. The defendants have appeared by demurrer, challenging the

sufficiency of the complaint as to substance. Therefore the status of the plaintiff stands admitted as alleged.

Chapter 181 was assailed on many of the identical grounds alleged in plaintiff's complaint, as being unconstitutional and void, in the case of *O'Connell* v. *State Board of Equalization*, 95 Mont. 91, 25 Pac. (2d) 114, wherein the majority opinion of this court held the Act to be valid as against the attacks there made.

Plaintiff contends that these statutes are violative of sections ■ 1, 9 and 17, of Article XII of our Constitution. In the *O'Connell Case* it was held that the income tax provided for by Chapter 181 is not a property tax, and therefore the Chapter did not violate any of the above enumerated sections. For the reasons recorded in the *O'Connell Case*, we now hold that these sections of our Constitution are in nowise violated by either of these legislative enactments.

Our attention has been called to the statement made by Mr. Justice Holcomb of the supreme court of Washington, in the case of *Culliton* v. *Chase*, (Wash.) 25 Pac. (2d) 81, wherein it is said: "The overwhelming weight of judicial authority is that income is property, and the tax upon income is a property tax." Professor Allen of the University of Illinois, in an article appearing in the "Tax Magazine" of December, 1933, upon the subject "Limitations of Uniformity, Provisions of State Constitutions upon Income Tax Legislation," in discussing the weight of authority among the decisions of the courts of last resort of the various states, makes this observation: "Earlier decisions of state courts were divided about 50–50 on the question, but opinions rendered during the past decade have been preponderantly in favor of the view that income is not property, and that state income taxes are not restricted by uniformity provisions of state Constitutions." Through the course of his article Professor Allen refers to the decisions pro and con on this question, and then demonstrates by his citations the truth of his observations. The learned jurist from our neighboring state does not fortify his conclusion by any such array of citations, and in fact our investigation of the

adjudicated cases leads to the conclusion reached by Professor Allen.

Again our attention is invited to the impending disaster which will overtake the citizens of this state, by holding that the legislature in the enactment of future income tax laws is in nowise limited by the provisions of our Constitution. Most of the states have incorporated within their Constitutions various limitations upon the exercise of the taxing power by their legislative bodies. The states of New York, Iowa, Connecticut, Vermont and Rhode Island have practically no constitutional limitation whatever upon the exercise of the taxing power by their legislatures. It cannot be said that these states have not prospered during their existence to any less degree than have the neighboring states of similar areas and resources. The lack of constitutional restriction upon the taxing power has not operated to drive wealth beyond their borders. The state of New York, without such constitutional restriction, is first in wealth and population, and, indeed, within its confines is the city said to be the financial center of the business world.

The opinion of the majority of the court in the *O'Connell Case,* supra, is severely condemned for not defining or classifying the income tax, by counsel appearing herein as *amicus curiae.* We did, however, decide that the income tax is not a property tax. The supreme court of Arkansas very aptly expressed our views on this question in the case of *Stanley* v. *Gates,* 179 Ark. 886, 19 S. W. (2d) 1000, wherein it was said, speaking of the income tax: "If it is not a property tax it does not make any difference what name it is called. Whether it is called an excise tax or a tax in the nature of an excise tax, or a personal tax, is a mere matter of definition and does not in anywise change its character."

Plaintiff asserts that these Acts are invalid and void as being violative of the provisions of section 7, Article XII of our Constitution, providing as follows: "The power to tax corporations or corporate property shall never be relinquished or suspended, and all corporations in this state, or doing business therein, shall be subject to taxation for state, county, school,

municipal and other purposes, on real and personal property owned or used by them and not by this Constitution exempted from taxation.''

This court has heretofore interpreted that portion of this section relating to the taxation of the property of corporations. (*Northwestern Mut. Life Ins. Co.* v. *Lewis and Clarke County*, 28 Mont. 484, 495, 72 Pac. 982, 98 Am. St. Rep. 572). However, what was there said is without application here, since the income tax is not a property tax.

Plaintiff argues that, as corporations are not subject to the provisions of these income tax laws, the power to tax corporations is thereby relinquished or suspended. This court has never construed that portion of the above section. A number of our sister states have identical sections and others have similar sections in their Constitutions. We are unable to find where this provision has been the subject of judicial interpretation elsewhere.

Section 7 appears in our Constitution in the identical language as reported by the Committee on Finance to the Constitutional Convention. (Proceedings and Debates, p. 382.) There appears to have been but little debate upon the adoption of this section. Section 2 of Article XII, as originally reported to the Constitutional Convention, relating to exemption of property for purposes of taxation, contained a provision permitting the legislative assembly by general law to exempt property in addition to that therein enumerated. At the time these two sections, together with others, were reported to the convention, it was attempted to amend section 7 by striking out the word ''Constitution,'' as was said by the author of the amendment, in order to harmonize the two sections. The proposal to amend failed. (Proceedings of Constitutional Convention, p. 481.) Thereafter the provision appearing in section 2 as proposed, empowering the legislature by general law to exempt additional property was eliminated, the two sections being rendered harmonious by changing section 2, instead of section 7. It thus clearly appears that the portion of section

7 now under consideration was incorporated therein to prevent the exemption of corporations from taxation.

Our conclusion in this respect is fortified by the fact that valid statutes exempting property, rights or franchises, if made for a valuable consideration received by the legislature who enacted such statutes, are within the rules of decision specifying the description of contracts entitled to protection from modification or repeal under the guaranty of the federal Constitution. Such was the holding of the Supreme Court of the United States prior to the adoption of our Constitution, in *Union Passenger Ry. Co.* v. *Philadelphia,* 101 U. S. 528, 25 L. Ed. 912, wherein it was said: "Stipulations, in a statute of a state, exempting certain property, rights or franchises from taxation, or engaging that the same shall be taxed only at a certain rate, if made for a valuable consideration received by the state whose legislature enacted the stipulation, is a contract, and as such comes within the rules of decision specifying the description of contracts entitled to protection from modification or repeal under the guaranty of the tenth section of the first Article of the Constitution." Many illustrative cases upholding charter exemptions from taxation to educational, religious or charitable institutions are collected in the note. (2 A. L. R. 471.)

The manifest purpose of the prohibition against the relinquishment or suspension of the power of taxation was to prevent the creation of corporations under provisions of law whereby the right to tax such corporation or corporations was either relinquished during the existence of the corporation or suspended for a definite period of time.

These income statutes omit from their provisions the taxation of corporations. By this omission no corporation can maintain that the right to tax it was suspended or relinquished, within the guaranties of the federal Constitution, and accordingly we hold that the Acts in question do not violate section 7 of Article XII of our Constitution.

Plaintiff urges that the defendant board is without authority to construe these statutes to be retrospective in their

operation. Section 2 of Chapter 181 provides: "Such tax shall first be levied, collected and paid in the year Nineteen Hundred and Thirty-four with respect to the taxable income for the calendar year Nineteen Hundred and Thirty-three, or in the case of any taxable year ending during the year Nineteen Hundred and Thirty-three, the portion of such taxable year beginning January first, Nineteen Hundred and Thirty-three."

Chapter 40, which is an amendment to section 2, contains the identical language above quoted. We have no special constitutional limitation prohibiting retrospective legislation, except section 13 of Article XV, which is without application here. (*State ex rel. Rankin* v. *District Court,* 70 Mont. 322, 225 Pac. 804.)

Section 3 of our Codes provides: "No law contained in any of the Codes or other statutes of Montana is retroactive unless expressly so declared." This section is but a rule of construction. (*Butte & Superior Min. Co.* v. *McIntyre,* 71 Mont. 254, 229 Pac. 730.)

It is argued by plaintiff that the words "with respect to the taxable income for the calendar year 1933" is not an express declaration that the tax for the year 1934 should be paid on the income accrued during the year 1933. The effect of section 3, supra, as a rule of construction, is to exclude the use of any extrinsic aids to which the courts may in proper cases resort in interpreting a statute. The intention of the legislature that the law is retrospective must be gathered from the Act itself, and from no other source.

This court, in the case of *State ex rel. Heinze* v. *District Court,* 28 Mont. 227, 72 Pac. 613, had under consideration the meaning of the phrase "with respect to a receivership," as it appeared in a statute providing for an appeal "from an order * * * giving directions with respect to a receivership." It was there held that the quoted phrase had reference to an active receivership and not a closed receivership.

Since the phrase "with respect to" means "with reference to," when the legislature said that the income tax for the year 1934 should be collected and paid with respect to the taxable income for 1933, it said that the tax for the year

1934 should be paid with reference to the taxable income for the year 1933.

Plaintiff in support of his contention strongly relies on the case of *Byrne* v. *Fulton Oil Co.*, 85 Mont. 329, 278 Pac. 514. There Chapter 140 of the Laws of 1927 was in question. It was approved on March 9, 1927, and became effective by its own terms as of January 1, 1927, and it was provided that the tax should be computed from statements showing the product (royalty oil) produced during the preceding calendar year. The minority of this court adhered to the view that taxes under the law there in question should be computed on the royalty received during the year 1926. A majority of the court, however, held that the taxes on royalty accrued could not antedate January 1, 1927. The reasoning by which either of these conclusions was attained is not disclosed by the opinion. However, it is clear that the majority view did give the Act retrospective effect from the date of its approval to the date when the legislature said it was to become operative. There the legislature had fixed a definite date when the Act became effective, and thereby clearly marked and defined the limits of its retroactive effect. We are unable to see wherein the view of the majority as expressed in the *Byrne Case* is at war with our conclusion here. We accordingly hold that the State Board of Equalization has not misconstrued the statute as asserted.

Section 2 of Chapter 40 provides that twenty per cent. of the ██ collections from the income and surtax shall be deposited by the state treasurer in the emergency relief fund, which is created by Chapter 20 of the Laws of the Extraordinary Legislative Assembly of 1933. Section 1 of the Chapter declares that the purpose of the emergency relief is "to provide means for the sustenance of life and the relief of distress among people of the state whom economic conditions, industrial inactivity, or other causes over which they have no control has deprived of support."

Plaintiff contends that the provision providing for the deposit of a portion of the income tax collections to this fund

renders the Act unconstitutional. The following provisions of the Constitution are the bases of this contention:

Section 5 of Article X provides: "The several counties of the state shall provide as may be prescribed by law for those inhabitants, who, by reason of age, infirmity or misfortune, may have claims upon the sympathy and aid of society."

Section 4 of Article XII provides: "The legislative assembly shall not levy taxes upon the inhabitants or property in any county, city, town, or municipal corporation for county, town, or municipal purposes, but it may by law invest in the corporate authorities thereof powers to assess and collect taxes for such purposes."

By the provisions of section 5 of Article X it is made the duty of the counties to provide for the sustenance of persons who are unable to care for themselves. Section 4 of Article XII prohibits the legislature from levying a tax upon the inhabitants of counties for county purposes.

Plaintiff relies upon the case of *State ex rel. Pierce* v. *Gowdy*, 62 Mont. 119, 203 Pac. 1115, wherein this court declared invalid an Act of the legislature providing for the imposition of a tax upon every male inhabitant who was not the head of a family, to be, when collected, deposited in the county poor fund. It will be noted that under the Act in question the collections are to be deposited, not in a county fund, but in a state fund, to be used for the relief of citizens of the state wherever located, within its boundaries.

The legislature has plenary power in the enactment of legislation, except so far as it is inhibited by the Constitution. (*O'Connell* v. *State Board of Equalization*, supra, and cases there cited.) When the framers of our Constitution by section 5 of Article X made it the duty of counties to provide for the support and care of unfortunates, they did not thereby prohibit the legislature from likewise making provision whereby the state could assist in the care of these deserving persons. In the case of *State* v. *State Board of Equalization*, 56 Mont. 413, 185 Pac. 708, 186 Pac. 697, this court said: "The maxim *expressio unius est exclusio alterius*, invoked by respondents, is

a rule of interpretation, and not a constitutional command; and cannot be made to serve as a means to restrict the plenary power of the legislature, nor to control an express provision of the Constitution.''

The contention of the plaintiff is without merit.

Plaintiff asserts that Chapters 181 and 40 are violative of the Fourteenth Amendment, in that they deny the equal protection of the law. The argument as to Chapter 181 proceeds upon the theory that because individuals are taxed and corporations not included therein, unjust discrimination results. This question was decided adversely to this contention, in the case of *O'Connell* v. *State Board of Equalization*, supra, and in accordance with the conclusions there reached we now again hold this contention to be without merit. In passing, however, by reason of the expressed view of one of the minority of the court with reference to the alleged discriminations between individuals and corporations, both engaged in the same business, it may be well to give additional consideration to the contention there made.

''The fact that a statute discriminates in favor of a certain class does not make it arbitrary if the discrimination is founded upon a reasonable distinction.'' (*Tax Commrs.* v. *Jackson*, 283 U. S. 527, 51 Sup. Ct. 540, 75 L. Ed. 1248.) ''Discrimination merely is not inhibited, for it is recognized that there are discriminations which the best interests of society require.'' (*Bank of Miles City* v. *Custer County*, 93 Mont. 291, 19 Pac. (2d) 885.)

As was pointed out in the *O'Connell Case*, supra, a corporation is but a group of individuals banded together for the purpose of conducting a business for profit, and the profits derived from the conduct of business by the corporation constitute income, which in the ordinary course of business passes on to the individuals forming the artificial person as dividends on the stock or certificates of interest of its members. It was there also observed that under our Income Tax Law, Chapter 181, Laws of 1933, the dividends accruing to stockholders of corporations are taxable as income. Under the income tax laws

of many states the income of the corporation is taxed and the dividends received by the stockholders exempted. Such a law would avoid the condemnation adverted to above.

Professor Harold M. Groves, of the University of Wisconsin, in an able article appearing in the March issue, 1934, of the "Tax Magazine" in discussing recent state income taxation in the United States, makes this observation: "Sooner or later the states will realize that a tax on the corporation is not a satisfactory way to tax the stockholder and the dividends should be taxed to the stockholder. The corporation taxed takes no account of the stockholder's ability to pay, nor of his personal benefits from government."

The state of Wisconsin was the pioneer state among the American states in the field of income tax legislation. Their first Act was passed in the year 1911, and since that date Wisconsin has continued within this field of taxation. In the report of the Wisconsin State Tax Commission to the governor and legislature in 1932, in discussing this question it is stated: "If it be granted that the tax on the corporation reaches the stockholder, it is a very crude method of doing so. Income taxes are levied on the theory of ability to pay. We tax all the stockholders of a corporation at the same rate when we impose a tax on corporate income. Stockholder A may have $500,000 of dividends in addition to his salary and a large income from bonds. He may have no dependents at all. Stockholder B may receive $500 of dividends as his only income and have a wife and three dependent children. The corporation income tax falls equally upon these stockholders."

The foregoing quotations clearly indicate a reason substantial in character for the exclusion of corporations from the operation of the Income Tax Law and, in lieu thereof, the taxing of dividends in the hands of stockholders. All that is required to avoid the violation of the equal protection clause of the Fourteenth Amendment as against a charge of arbitrary discrimination, is that a reason exist for such discriminations as may result in the operation of any legislative enactment.

Whether the policy of the legislature in excluding corporations is wise, expedient, or desirable, is not within the province of judicial tribunals. It was said by the supreme court of Vermont in the early case of *In re Powers*, 25 Vt. 261, quoted with approval by the supreme court of South Dakota in the case of *State ex rel. Botkin* v. *Welsh*, (S. D.) 251 N. W. 189: "The judicial tribunals of the state have no concern with the policy of legislation. That is a matter resting altogether within the discretion of another co-ordinate branch of the government. The judicial power cannot legitimately question the policy or refuse to sanction the provisions of any law not inconsistent with the fundamental law of the state."

It is argued that corporations, by declaring stock dividends, may transmit to their stockholders a portion of their profits without rendering the stockholder liable to the payment of an income tax. The effect of a stock dividend has been indeed very well described by the Supreme Court of the United States in the case of *Towne* v. *Eisner*, 245 U. S. 418, 38 Sup. Ct. 158, 62 L. Ed. 372, in the following language: "A stock dividend really takes nothing from the property of the corporation and adds nothing to the interest of the shareholder. Its property is not diminished and their interests are not increased. The proportional interest of each stockholder remains the same. The only change is in the evidence which represents that interest. The new shares and the original shares together representing the same proportional interests that the original shares represented before the issue of the new ones. In short, the corporation is no poorer and the stockholder is no richer than they were before."

By the provisions of section 1 of Chapter 40, section 2 of ▮▮▮ Chapter 181 was amended to provide for a surtax in addition to the normal tax which again appears in this amendment without change. The amendment provides in part:

"(e) There shall also be levied and collected and paid for each taxable year upon the net income of each individual a surtax as follows:

"On the first Two Thousand Dollars ($2,000.00), no surtax;

"Upon net incomes in excess of Two Thousand Dollars ($2,000.00) and not in excess of Four Thousand Dollars ($4,000.00), one per centum (1%) of such excess;

"Upon net incomes in excess of Four Thousand Dollars ($4,000.00), and not in excess of Six Thousand Dollars ($6,000.00), two per centum (2%) of such excess;

"Upon net incomes in excess of Six Thousand Dollars ($6,000.00), and not in excess of Eight Thousand Dollars ($8,000.00), three per centum (3%) of such excess."

Following the above quotation appear numerous paragraphs identical in language with the exception that the amounts of net income are different and the rate of taxation is increased in each paragraph or bracket. The last two paragraphs provide:

"Upon net incomes in excess of Eighty Thousand Dollars ($80,000.00), and not in excess of One Hundred Thousand Dollars ($100,000.00), twenty-four per centum (24%) of such excess;

"Upon net incomes upwards in excess of One Hundred Thousand Dollars ($100,000.00), twenty-five per centum (25%) of such excess."

The Board of Equalization, as disclosed by the complaint, has proceeded to construe these surtax provisions as providing for a graduated and progressive surtax. It will be noted from a careful reading of each of these paragraphs or brackets, which are twenty-five in number, that the net income of a person mentioned in a particular paragraph or bracket is a net income distinct from those mentioned in any other paragraph or bracket. The first bracket mentions net incomes in excess of $2,000, and not in excess of $4,000. The second refers to net incomes in excess of $4,000 and not in excess of $6,000. In each bracket the tax is levied upon the excess at the rate there prescribed. In the second paragraph the tax is levied at the rate of two per cent. upon a net income in excess of $4,000 and not in excess of $6,000, but only upon such excess. No reference is made in any one paragraph to the incomes

described or classified in any other paragraph. A literal reading of these paragraphs leads to the inescapable conclusion that by the language used the net income assessed is the excess only as described in the particular paragraph under consideration. To arrive at the construction adopted by the State Board of Equalization it is necessary to read into each of these brackets following the first, the following words: "in addition to the tax levied in the preceding brackets," or words of similar import.

If the statute is said to be ambiguous, the result is no different, for when a taxing statute is susceptible of two constructions and the legislative intent is in doubt, such doubt should be resolved in favor of the taxpayer. (*Shubat* v. *Glacier County*, 93 Mont. 160, 18 Pac. (2d) 614; *Vennekolt* v. *Lutey*, 96 Mont. 72, 28 Pac. (2d) 452.)

The legislature having failed to fix a rate of taxation graduated and progressive as to the surtax, it failed to make a levy which is graduated and progressive. (*State ex rel. Murray* v. *Walker*, 64 Mont. 215, 210 Pac. 90.) This court will not read into a statute words necessary to make it conform to a supposed intention of the legislature. (Sec. 10519, Rev. Codes 1921; *Vennekolt* v. *Fischl*, supra; *State ex rel. Kurth* v. *Grinde*, 96 Mont. 608, 32 Pac. (2d) 153.) While it is the general rule that it is the duty of this court to ascertain the intention of the legislature, if possible, and construe the Act with reference to that intention, it is equally true that the intention must be gathered from the language employed by the lawmakers and not from street rumors or other similar sources. (*State ex rel. Murray* v. *Walker*, supra.)

It has been suggested that because each bracket ends with a semicolon, all these brackets constitute a single sentence, and therefore the language of each bracket carries over and down through each succeeding bracket, each thereby modifying the other.

It is said that construing a statute according to the punctuation is a most fallible guide by which to interpret a writing. (*Ewing* v. *Burnet*, 11 Pet. 41, 9 L. Ed. 624.) "The

comma and semi-colon are both used for the same purpose; namely, to divide sentences and parts of sentences, the only difference being that the semi-colon makes the division a little more pronounced than the comma." (*Holmes* v. *Phenix Ins. Co.*, 98 Fed. 240, 39 C. C. A. 45, 47 L. R. A. 308.) This court in the case of *State ex rel. Jones* v. *Erickson*, 75 Mont. 429, 244 Pac. 287, said: "In construing a statute the court must elicit the purpose and intent of the statute from the terms and expressions employed, if this is possible, calling to its aid the ordinary rules of grammar (*Jay* v. *School District*, 24 Mont. 219, 61 Pac. 250), and great weight should not be given to the position of a comma. (*State* v. *Pilgrim*, 17 Mont. 311, 42 Pac. 856.)"

The circuit court of appeals for the ninth circuit, in the case of *McLeod* v. *Nagle*, 48 Fed. (2d) 189, had before it the precise question as to whether or not that portion of a sentence preceding a semicolon modifies the succeeding portions of the sentence, wherein the court in discussing the effect of a semicolon said: "The Oxford Dictionary, after defining a semicolon, says that it is used for 'marking off a series of sentences or clauses of coordinate value.' (Vol. VIII, part II, p. 440.) According to this statement of usage, every clause separated by a semicolon in the section under consideration is co-ordinate with each of the others, and therefore must each be read separately with the verb 'shall ❋ * * be taken into custody and deported.' Under this construction the beginning phrase, 'at any time within five years,' cannot be carried over to each of the succeeding clauses; each of the latter must be modified only by the time limit, specifically stated therein, and if no time limit is expressed, then the section must be interpreted to mean 'at any time after the entry of the alien into the United States.'

"Again, Crowell's Dictionary of English Grammar (Thomas Crowell, 1928) says at page 527: 'The semicolon is used to separate independent clauses that are not joined by a conjunction, as "He cried; I laughed"; to separate co-ordinate clauses of unusual length and those that contain commas,

whether or not the clauses are joined by conjunctions; to separate conditional clauses joined by conjunctive adverbs.' The clauses of the instant section are each as independent as the clause of the example given, because of the fact that, although the predicate is expressed only once for the sake of brevity, it is elliptical to each of the sections set off by semicolons.

"Again, Ward's 'Sentence and Theme' (Scott, Foresman & Co., 1923), at page 331, says the semicolon 'shows that two sentences, each of which should stand alone, have been combined into one sentence'; and continues, 'A semicolon is used to show that what follows is *grammatically independent, though closely related in thought.*' (Italics our own.)

"From the point of view of strict grammatical construction, therefore, it is evident that, since the semicolon has been used to set off the various subdivisions of the section, the initial phrase 'within five years after entry,' cannot be presumed to carry over into the subsequent clauses that are separated from the initial clause by a semicolon. The initial phrase 'within five years after entry,' is set off by a comma, a weaker punctuation mark than the semicolon. The function of that comma is to set off the phrase from the rest of the clause in which it appears, and not from the rest of the entire section. The semicolon effectually isolates the opening clause and its dependent phrase from the other and subsequent clauses. These clauses have only one grammatical construction in common; they are joint subjects of the common predicate with which the entire section is brought to a close."

Accordingly, the semicolons between these various brackets do not have the effect suggested. They separate distinct sentences.

As the rates are provided in the Act, a person having a net income of exactly $4,000 would pay a surtax of $20; one having a net income of $4,001 would pay a surtax of two cents; one having a net income of $99,000 would pay a surtax of $4,560, whereas a person with an income of $100,001 would pay a surtax of twenty-five cents.

The above illustrations demonstrate the discriminations which result between taxpayers of substantially equal net incomes; also discriminations whereby the beneficiary of a comparatively small net income pays a many times greater tax than a beneficiary of a net income many times the smaller; as, for instance, the man who has a net income of exactly $4,000 pays a surtax of $20, and the man who earns exactly $100,001 pays twenty-five cents.

It may be said that the State Board of Equalization is not ▆▆▆ so construing the law, but it is no argument in favor of the law that the officers are not enforcing it. The statute very clearly leads to these discriminations; and the question is not, what has been done under it, but what may be done under it. (*State* v. *Sunburst Ref. Co.,* 73 Mont. 68, 235 Pac. 428.)

It is the duty of the taxing authorities to enforce the laws ▆▆▆ as written and construed by the courts. (*Montana Nat. Bank* v. *Yellowstone County,* 276 U. S. 499, 48 Sup. Ct. 331, 72 L. Ed. 673.)

The equality clause of the Fourteenth Amendment does not ▆▆▆ compel a state to adopt an iron-clad rule of equal taxation, nor require it to resort to close distinctions or to maintain precise scientific uniformity with reference to composition, use, or value, nor prevent it from exercising a broad discretion in the classification of properties, businesses, trades, callings or occupations for the purpose of taxation. (*O'Connell* v. *State Board of Equalization,* supra, and cases there cited.) However, there is a point beyond which a state cannot go without violating the equal protection clause. While a state may classify broadly the subjects of taxation, in doing so it must proceed upon a rational basis. It is not at liberty to resort to classification that is palpably arbitrary. The classification must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons in similar circumstances shall be treated alike. (*O'Connell* v. *State Board of Equalization,* supra, and cases there cited.)

The discriminations between individual taxpayers under the surtax portion of Chapter 40 are so arbitrary that no rational basis or reason for their existence can be suggested. Therefore, the provisions of section 1 of Chapter 40, so far as they specify rates under the surtax provision enumerated therein, are violative of the Fourteenth Amendment of the federal Constitution, and accordingly null and void.

It is accordingly ordered that the plaintiff have judgment against the defendants enjoining the enforcement and attempted collection of the surtax specified in Chapter 40 as against plaintiff and all other persons similarly situated, and that the plaintiff be denied any further or other relief.

MR. JUSTICE STEWART concurs.

MR. JUSTICE MATTHEWS: Having concurred in the opinion in the *O'Connell Case,* I concur in sustaining the validity of Chapter 181, Laws of 1933, but cannot bring myself to agree to the treatment of the surtax amendment.

In *State ex rel. Jones* v. *Erickson,* cited, I attempted to commit this court to the doctrine that the placing of punctuation marks, by men not necessarily conversant with their technical effect, should receive little consideration in determining the meaning of a legislative Act.

Without invoking technical rules of grammar, in my opinion the principal clause of subdivision (e) which reads, "There shall also be levied and collected and paid * * * upon the net income of each individual a surtax as follows": controls, and the remainder of the subdivision provides a graduated tax upon *the* net income of each individual, and the whole thereof, which can be only a succession of computations upon excesses until the total of the individual's income is reached.

In construing the Acts before us we have no authority to invade the legislative field and consider the wisdom, expediency or popularity of the law; we are concerned only with its legality. If the sovereign people are not in accord with the past or

future action of the legislature, the constitutional provisions as to initiative and referendum are always available to them for the nullification of the Acts of their representative body.

MR. CHIEF JUSTICE CALLAWAY: I concur in the opinion of Mr. Justice Anderson so far as it condemns the surtax attempted to be set up in Chapter 40 by the Extraordinary Session of the Legislative Assembly of 1933-34; and as a direct attack is made upon the entire statute and also upon Chapter 181 of the Session Laws of 1933, I go further and say *O'Connell* v. *State Board of Equalization,* 95 Mont. 91, 25 Pac. (2d) 114, should be overruled.

That the Income Tax Law, Chapter 181, supra, is contrary to the Constitution of this state, I have not the slightest doubt. My views are set forth in my dissenting opinion in the *O'Connell Case.* But for the reasons following I am persuaded that a few additional observations may be useful.

The majority opinion in that case rests principally upon the fallacy that income is not property, following *Diefendorf* v. *Gallet,* 51 Idaho, 619, 10 Pac. (2d) 307. Idaho has an entirely different constitutional provision from ours; it reposes in the legislature the right to define property, whereas our Constitution defines property in all-inclusive language (sec. 17, Art. XII), which is binding and conclusive upon every department of the state government. That constitutional definition necessarily and inescapably includes income.

In addition to that, the majority declared an excise tax to be an income tax, contrary to our Constitution and the great weight of authority.

Within two months after the opinions in the *O'Connell Case* were delivered, the supreme court of Washington delivered its opinion in *Culliton* v. *Chase,* 173 Wash. 309, 22 Pac. (2d) 1049. Mr. Justice Holcomb, who delivered the principal opinion, said the attention of the court had been directed to the recent Montana case of *O'Connell* v. *State Board of Equalization,* and observed: "Stress was laid in that case upon the fact that the law was copied from the Idaho Act, which had

theretofore been construed by the supreme court of that state, and it necessarily followed that the law and the judicial interpretation were adopted in the Montana statute. With due respect to the majority of that court, it seems obvious to us, as pointed out in the dissenting opinions, that the majority lost sight of the unique provisions of the Idaho Constitution as stated by that court itself. Had we the same 'unique' constitutional provision as has Idaho, we should probably follow the decision of that court upon the validity of the income tax law before us.'' In his opinion the learned justice also said: ''The overwhelming weight of judicial authority is that 'income' is property, and a tax upon income is a tax upon property.''

That there is ample authority for the statement is seen by referring to the authorities cited in my opinion in the *O'Connell Case*. In view of the ''conclusion'' of Professor Allen, referred to in the majority opinion, it may not be amiss to call attention to the fact that the ''weight of authority'' does not depend upon the number of opinions upon one side or another of a debated question. It rests upon the sounder opinions, those which are supported by reason, experience and wisdom. Upon this foundation there cannot be any doubt that the great weight of authority sustains the assertion that income is property; and this is especially true under our Constitution.

But why cite authority to sustain a proposition so obvious? If a man were deprived of his income without due process of law,—contrary to the federal and state Constitutions,—is it possible that any court in the land would hold that he was not unlawfully deprived of property for the reason that income is not property?

The result of the decision in the *O'Connell Case* was foreseen; in my dissenting opinion it was predicted that the operation of Chapter 181 would increase taxes during the present biennium. It has. It was also pointed out that ''if the legislature has the right, under the Constitution, as it now

exists, to levy an income tax, it may employ that tax to raise large sums of money in addition to the *ad valorem* tax as provided by the Constitution.''

The Extraordinary Session by enacting Chapter 40 attempted through the surtax device to increase the income taxes of individuals. It doubled, trebled, quadrupled, and so on into higher brackets, the normal income tax established in Chapter 181, as is shown in the majority opinion. And it is to be noted that the legislature, unless restricted by the Constitution, may do so again and go still further, by employing the pen of a more skilled draughtsman, and thus the tax burden, now oppressive, will become unbearable, entailing ills upon the people beyond their sufferance. The income tax system, highly desirable if properly safeguarded, should be couched in plain language, so that its operation will be equitable and just. It should not be permitted to become an instrument of tyranny.

The constitutional barriers so carefully erected by the people in their Constitution have been broken down by the *O'Connell Case*. I call attention again to the desirability of enacting the pending constitutional amendment which provides that the legislative assembly may levy ''and collect taxes upon incomes and persons, firms and corporations for the purpose of replacing property taxes.'' That policy is recognized by Chapter 181 of the Laws of the 1933 Assembly, and Chapter 40 of the Laws of the Special Session of 1933–34, but no machinery is provided to make it effective; and a future legislative assembly, desirous of imposing greater taxes, unless restrained by the Constitution, may disregard it altogether.

If there was a doubt that Chapter 181 is unconstitutional, as unreasonably discriminatory in favor of corporations and against individuals, there is no doubt as to Chapter 40, which clearly offends section 7 of Article XII in that respect. On the other features of the case I do not express any opinion.

MR. JUSTICE ANGSTMAN: I concur in the result reached by the majority opinion in condemning the surtax, but dissent from the result reached as to the other provisions of Chapter

40, Laws of the Extraordinary Session of the Twenty-third Legislative Assembly.

For the reasons stated in my dissenting opinion in *O'Connell* v. *State Board of Equalization*, 95 Mont. 91, 25 Pac. (2d) 114, I think the entire Act is unconstitutional as unreasonably discriminatory in favor of corporations and against individuals. To say that an income tax is not a tax on property does not answer this question. There must still be found some reasonable basis for such hostile discrimination before the Act can be sustained whatever the character of the tax. (*State* v. *Sunburst Ref. Co.*, 73 Mont. 68, 235 Pac. 428.) In passing I may say that I have not the slightest doubt that income is property and therefore I agree with what is said by Mr. Chief Justice Callaway on this point.

The mere fact that of two rivals in business one is incorporated and the other not, furnishes no justification for penalizing the latter by a tax from which the former is exempt. Our fundamental law declares against such a policy (sec. 7, Art. XII, Montana Constitution). This section provides: "The power to tax corporations or corporate property shall never be relinquished or suspended, and all corporations in this state, or doing business therein, shall be subject to taxation for state, county, school, municipal and other purposes, on real and personal property owned or used by them and not by this Constitution exempted from taxation." This section does not relate to property taxes only but by its express language embraces "the power to tax corporations." The meaning of this section, when applied to a property tax, was stated by this court to be that the property of corporations shall bear its equal share of the burden of taxation. (*Northwestern Mut. Life Ins. Co.* v. *Lewis and Clarke County*, 28 Mont. 484, 72 Pac. 982, 98 Am. St. Rep. 572.) When we consider the words, "the power to tax corporations," as used in this section, it plainly means that corporations shall bear their equal share of the burden of taxation in whatever form. But if it can be said that section 7 of Article XII does not prohibit the

exemption of corporations from a tax imposed upon individuals, certainly when read in conjunction with section 11 of the same Article, there can be no doubt that the framers of the Constitution so intended. Section 11, in treating of taxes, provides, "They shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax." A tax on income, whether regarded as a property tax or not, is certainly a tax. When it is imposed upon individuals and not on competing corporations it is not uniform upon the same class of subjects.

Also, our Act conflicts with the federal Constitution in that it denies to individuals the equal protection of the laws as against competing corporations. (Sec. 1, Art. XIV, United States Constitution.)

The majority, hard pressed to find some reason for the hostile discrimination patent on the face of the Act, resort to an address of Harold M. Groves, Professor of Economics, of the University of Wisconsin, reported in the March, 1934, issue of the "Tax Magazine." He in effect states that it is his opinion that the states will sooner or later realize that a tax on corporations is not a satisfactory way to tax the stockholder, and that dividends should be taxed to the stockholder. He points out, however, that of the twenty-nine states having income taxes, only one taxes individuals only. The state which he names is the state of Delaware, the home and haven of corporations doing business elsewhere. He apparently overlooked the fact that the Montana law also does so. The Delaware Act does not appear to have been passed upon by the courts of that state.

It is to be noted also that Professor Groves does not suggest the remedy. He does not suggest that corporations be exempt. His complaint is that a tax on corporations is not a satisfactory way to impose a tax on stockholders. It is entirely possible that his view is that the corporation as well as the stockholder should be taxed in such a manner that all the corporate income shall be once taxed. After the statement quoted in the majority opinion, this eminent professor in

speaking of an income tax on corporations went on to say: "If the corporation is located in one place and the stockholder in another as is frequently the case, the stockholder may contribute nothing to the community in which he lives." It is immaterial that the stockholder may contribute nothing to the community in which he lives. If the corporation is taxed, the stockholder contributes to the community in which he enjoys the privilege of making an income through the corporate activities by a proportionate reduction in dividends, and that is the community which rightfully should receive the contribution in the way of an income tax. An income tax on the corporation as well as the stockholder could be so framed as to obviate the difficulty pointed out by Professor Groves and yet not result in double or unequal taxation.

The majority opinion also makes reference to the report of the Wisconsin State Tax Commission, in which that commission pointed out that under the laws of that state a person receiving as his sole income $500 as dividends on corporate stock has the same rate of taxation applied against it as the person who receives $500,000 annually from the same source. That objection is not eliminated by exempting corporations. Under our Act the same rate of taxation is applied to all incomes. Thus one receiving $500 of taxable income has the same rate of taxation applied against it as is applied against the first $500 of taxable income received by the one who receives an income of $500,000. If A has a taxable income of $6,500 the $6,000 receives the same rate of taxation as the first $6,000 received by B, who receives a taxable income of $500,000. And the $500 received by A in excess of the first $6,000 of taxable income takes the same rate of taxation as all that received by B in excess of $6,000. So that, if there be merit in the report of the Wisconsin State Tax Commission, the situation is not remedied by exempting corporations.

If we concede that it is competent for the legislature to exempt corporations on the theory that the burden is properly distributed by collecting the tax from the individuals receiving dividends, still this Act cannot stand because of the

discrimination between resident and nonresident stockholders, and because of the lack of machinery to collect the tax from absentee stockholders, and because corporations do not distribute as dividends all their income, as pointed out in my dissenting opinion in the *O'Connell Case.*

Since I think the whole Act must fall, I express no opinion as to the other points discussed in the opinion of Mr. Justice Anderson, except that I do not agree with his attempt to distinguish this case from that of *Byrne* v. *Fulton Oil Co.,* 85 Mont. 329, 278 Pac. 514, on the retroactive feature of Chapter 40. In the *Byrne Case* the statute involved was passed March 9, 1927, effective January 1, 1927, and by its terms it imposed a tax payable in 1927 on income yielded during the preceding calendar year. The preceding calendar year was, of course, 1926. Here Chapter 40 was passed January 16, 1934, effective January 16, 1934, and by its terms it imposes a tax payable in 1934 on income received in 1933. The two cases are identical in principle. It is true that Chapter 40 specifically states that the tax for 1934 shall be on the income received in 1933, but that is no different from the Act involved in the *Byrne Case,* which imposed the tax in 1927 on the income received during the preceding calendar year. The *Byrne Case* was followed in the later cases of *Anderson* v. *Sunburst Oil & Ref. Co.,* 89 Mont. 175, 296 Pac. 1108, and *Forbes* v. *Mid-Northern Oil Co.,* 90 Mont. 297, 2 Pac. (2d) 1018. I disagreed with the majority opinion on this point in the *Byrne Case* and agreed to the *Anderson* and *Forbes Cases* on the ground of *stare decisis.*

I agree with the conclusion stated in the opinion of Mr. Justice Anderson on the subject of the retroactive effect of Chapter 40, but I think in arriving at that conclusion the *Byrne, Anderson* and *Forbes Cases* should be expressly overruled so far as they treat of this point.

Since I think the whole of Chapter 40 is invalid, I concur in the result announced in the opinion of Mr. Justice Anderson so far as it condemns the surtax. I think the court should go further and condemn the whole Act and overrule the opinion in *O'Connell* v. *State Board of Equalization,* supra.