STATE EX REL. HOLT, GOVERNOR, RELATOR, v. DISTRICT COURT ET AL., RESPONDENTS.

(No. 7,652.)

(Submitted November 28, 1936. Decided December 9, 1936.)

[63 Pac. (2d) 1026.]

*Mr. Enor K. Matson,* Attorney General, *Mr. Jeremiah J. Lynch,* First Assistant Attorney General, and *Mr. John L. Slattery,* for Relator, submitted an original and a reply brief; *Mr. Lynch* and *Mr. Slattery* argued the cause orally.

*Mr. George E. Hurd, Mr. Horace S. Davis, Mr. Rockwood Brown, Mr. John W. Bonner, Mr. Melvin N. Hoiness* and *Mr. Franklin S. Longan,* for Respondents, submitted an original, a supplemental and a reply brief; *Mr. Bonner* also submitting a separate memorandum of authorities. *Mr. Hurd, Mr. Davis* and *Mr. Bonner* argued the cause orally.

## Opinion: PER CURIAM.

This is an original proceeding brought against the district court of Lewis and Clark county and one of the judges thereof to secure relief from a writ of review, and an injunction order, both issued out of that court in the same proceeding.

On October 28, 1936, the acting Governor of the state presented accusations or charges against the three members of the Highway Commission and issued a notice to them to appear on a day certain to show cause, if any they had, why they should not be removed from their several offices as members of the Highway Commission. Each of the members of this commission was by separate accusation or charge accused of having at different times drawn from the funds of the state illegal

fees and mileage. In addition, commissioners Brown and Mc-Gregor were accused of participating in the passage of a motion authorizing and requesting commissioner Croonenberghs to act as traveling representative for the Highway Commission and to devote such time as he might be able to act in looking after the equipment and other business matters throughout the state, thereby enabling commissioner Croonenberghs to draw alleged illegal fees and mileage.

The commissioners separately appeared and filed separate demurrers to the charges filed by the Governor, which demurrers were by him overruled; thereupon each of the commissioners filed separate answers. By these answers they admitted the receipt of the fees and mileage as charged by the Governor, and asserted that there was no illegality in their receiving any or all of these various fees and mileage, in that they pleaded the administrative interpretation of the law by the Highway Commission and the State Board of Examiners, both present and past, the adjudication of the legality of these various claims by virtue of their allowance by the Board of Examiners, the fact that their conduct in drawing these fees and mileage was in accordance with the custom and practice since the creation of the Highway Commission in its present form, that they acted in good faith, believing the law to authorize the collection of these fees. They further alleged that in the month of July, 1936, the Attorney General, by written opinion to the Governor, held that certain of these fees were illegal, and that thereafter each of the members refrained from making claim for or drawing any fees or mileage similar to those alleged in the accusations to be illegal.

By a second affirmative defense they alleged that by reason of certain political activities on the part of the Governor he was biased and prejudiced against them and therefore not a proper person to try them on these accusations. After the filing of their answers a hearing commenced before the Governor at which testimony was adduced tending to show that the items set forth in the various accusations were for per

diem and mileage claimed by and paid to the individual commissioners on dates and at times when there was no meeting of the commission.

Following the admission of the testimony in support of the charge the Governor announced that, as to the affirmative defenses of good faith and of custom and practice, he assumed the members of the commission would make an offer of proof in support of these allegations and that he would consider such offer of proof as duly made, and each such offer was by him denied, and that the other so-called defenses in the first affirmative defense were irrelevant. As to the second affirmative defense he ruled that it was scurrilous, defamatory and contemptuous and that the allegations therein were set forth in bad faith and for political purposes, and that he would hear no evidence respecting these allegations. He concluded that, in view of the admissions and allegations in the respective answers and the decisions of this court, there was no necessity for hearing further evidence, and that the proceeding was closed subject to the rendering of a decision on its merits. Thereafter separate orders were made by the Governor removing each of the commissioners from their office as members of the State Highway Commission.

Thereafter the members of the State Highway Commission applied to the respondent court for a writ seeking a review of the proceedings before the Governor and enjoining him from proceeding to appoint successors as members of the Highway Commission, and from in any manner proceeding further with any attempt to remove the commissioners. Pursuant to this application the respondent court issued a writ of review to the Governor, directing that he certify a full, entire, correct, and complete record of all the proceedings had, actions taken, and things done by him in the matters occurring at the hearing before him, together with the order of removal to the end that the same might be reviewed. At the same time an order to show cause and a temporary restraining order was issued in the same proceeding restraining the Governor, pending the return of the order to show cause, from proceeding further

"in any manner or by any means whatever with the removal or attempted removal of the accused commissioners from their several offices as members of the State Highway Commission, and from appointing or naming successors or pretended successors to their offices and from disturbing or molesting their offices as members of the State Highway Commission until the further order of the court."

Thereupon, and prior to the return day of the order to show cause and the writ of review, application was made to this court to secure appropriate relief and seeking the annulment of the proceedings in the respondent court, as the result of which we issued an alternative writ directing the court to either dismiss the proceedings or to show cause. The respondents appeared by motion to quash and also answered, without waiver of any rights under the motion.

Section 1783, Revised Codes, provides for the creation of the Highway Commission in its present form, consisting of three members to be appointed by the Governor, each of whom shall hold office for the term of four years and until his successor is appointed and qualified. Section 1784 declares that "the members of the state highway commission shall be appointed by the governor and may be removed by him at any time for cause."

This court had occasion to give consideration to the attempted removal of the members of a commission by the Governor under a like statute providing for removal of the members of a commission for cause, in the case of *State ex rel. Nagle* v. *Sullivan*, 98 Mont. 425, 40 Pac. (2d) 995, 998, 99 A. L. R. 321, where a complete review of the authorities was made, and after due consideration we arrived at certain conclusions which we deemed to be the settled law of this state. We there said: "This phrase 'for cause,' as used in this connection, means for reasons which the law and sound public policy recognize as sufficient warrant for removal (*Street Commissioners* v. *Williams*, 96 Md. 232, 53 Atl. 923; *In re Nichols*, 57 How. Pr. [N. Y.] 395), that is 'legal cause' (*Attorney General* v. *Crowley*, 75 N. H. 393, 74 Atl. 1055, 139 Am. St. Rep.

725), and not merely a cause which the appointing power, in the exercise of discretion, may deem sufficient (*State* v. *Common Council of City of Duluth,* 53 Minn. 238, 55 N. W. 118, 39 Am. St. Rep. 595). It follows, inevitably, that when a statute provides for an appointment for a definite term of office, without provision otherwise, or provides for removal 'for cause,' without qualification, removal may be effected only after notice has been given to the officer of the charges made against him and he has been given an opportunity to be heard in his defense. [Citing cases.] The rigorous application of the rule can only be evaded in such cases by an express grant of power to remove at will. * * * Under this class of statutes, the requirement of notice and hearing cannot be evaded by any subterfuge. [Citing cases.] * * * But we do hold that whenever the charges on which the Executive proposes to act involve malfeasance, misfeasance, or nonfeasance in office, or directly reflect upon the official or personal integrity of the incumbent whom he proposes to remove, the statute requires notice and the opportunity to disprove, if possible, the charges made.''

It will be observed from the foregoing quotation that it is necessary in the removal proceeding of this character for notice to be given and hearing had after such notice. It is not here contended by anyone that the notice in this instance was insufficient or in any way unreasonable. The principal contention on the merits, as we understand, aside from many procedural questions which are raised and some of which we will notice presently, is that the hearing had before the Governor was not such a hearing as was contemplated under the rules set forth in the *Sullivan Case,* supra.

As we have already stated, the Governor at the hearing declined to hear testimony with reference to the affirmative defense of good faith, etc. It is urged on behalf of the respondent court that such was the right of the commissioners under the provisions of section 11702, Revised Codes, which declares that when it is sought to remove persons from office for charging and collecting illegal fees for services rendered

or to be rendered in the office of the accused, he "shall be entitled, as a matter of defense, to offer evidence of &ast; &ast; &ast; his good faith or honest mistake, if any be shown, and the value received by the state &ast; &ast; &ast; against whom the charges or fees were made." The relator contends that this section is without application, as it declares on its face that it only relates to proceedings in the district court. The quoted part of this section was adopted as an amendment to it by the legislature in 1917 (Chapter 25). Theretofore county commissioners, in at least two counties of the state had been removed from office for the taking of illegal fees, and their cases were then pending either on appeal or other proceeding for review before this court, as is evidenced by the opinions in the cases of *State ex rel. Payne* v. *District Court,* 53 Mont. 350, 165 Pac. 294, 296, and *State* v. *Story,* 53 Mont. 573, 165 Pac. 748, 753. This court in the latter case observed in commenting upon the inability of the court to consider the defense of good faith that "it is doubtless true that, in the case of a commissioner acting honestly and with a view to the efficient discharge of the duties of his office, the conclusion is &ast; &ast; &ast; harsh. &ast; &ast; &ast; This, however, cannot be helped. Section 9006 [now section 11702, as amended] is general, makes no distinctions, leaves no room for judicial discretion." This amendment was a declaration by the legislature changing the policy of the law from that theretofore existing, at least as to accusations in the district court against public officers seeking their removal and allowing the matters mentioned supra, to be heard in defense.

In the case of *Mills* v. *State Board of Equalization,* 97 Mont. 13, 33 Pac. (2d) 563, 568, we said: "The judicial tribunals of the state have no concern with the policy of legislation. That is a matter resting altogether within the discretion of another coordinate branch of the government. The judicial power cannot legitimately question the policy, or refuse to sanction the provisions, of any law, not inconsistent with the fundamental law of the state."

In the case of *Mieyr* v. *Federal Surety Co.*, 97 Mont. 503, 34 Pac. (2d) 982, 984, we said: "This court, in the case of *State* v. *Gateway Mortuaries, Inc.*, 87 Mont. 225, 287 Pac. 156, 157, 68 A. L. R. 1512, said: 'What is the public policy of a state, and what is contrary to it, is not to be measured by the private convictions or notions of the persons who happen to be exercising judicial functions, but by reference to the enactments of the lawmaking power, and, in the absence of them, to the decisions of the courts. When, however, the legislature has spoken upon a particular subject and within the limits of its constitutional powers, its utterance is the public policy of the state. (Mr. Chief Justice Brantly in *MacGinniss* v. *Boston & Mont. C. C. & S. M. Co.*, 29 Mont. 428, 75 Pac. 89, and *Parchen* v. *Chessman*, 49 Mont. 326, 142 Pac. 631, 146 Pac. 469, Ann. Cas. 1916A, 681.)'"

True, the legislature outlined no procedure as to the manner of removal for cause of a highway commission, but they left the method of procedure to be prescribed by the public policy of the state, and any method of procedure in conformity with the public policy of the state is sufficient. We have already declared in the case of *State ex rel. Nagle* v. *Sullivan*, supra, the public policy of the state requires notice and a hearing. The legislature made a declaration as to the public policy of the state specifically as to removal of public officers by accusation in the district court. Under our Constitution and laws a proceeding might, in a proper case, be brought under section 11702 for the removal of a highway commissioner, that being an office created by the legislature and not by the Constitution. In such a proceeding evidence of good faith may be heard in defense. To now say that the same evidence may not be heard in a proceeding before the Governor for the removal of a public officer is to ignore the declaration of the legislature on the question and to substitute the notion of the judge or judges.

We therefore hold that it was the duty of the Governor to hear the evidence which might be offered in support of the defense of good faith; in other words, it was his duty to "hear

all, view all, consider all, and then decide" the case on its merits in the light of the record before him. (*State* v. *Healow*, 98 Mont. 177, 38 Pac. (2d) 285.)

The second affirmative defense at most merely tended to ▇ indicate that the Governor was prejudiced against the commissioners, and, therefore, not a proper person to proceed to hear the evidence in support of the accusations and in defense and thereafter render thereon a decision. The statute authorizing the Governor to remove the commissioners for cause makes no provision for the disqualification of the Governor. What we said with reference to the question of the alleged disqualification of a police commissioner under a similar statute, applies with like force and effect here. In *State ex rel. Mueller* v. *District Court*, 87 Mont. 108, 285 Pac. 928, 930, we said: "The statute makes no provision for the disqualification of members of the commission on the ground of bias or prejudice, and it must be held, in accordance with the law, that, regardless of the personal opinions of its members, this tribunal has exclusive jurisdiction of the subjects delegated to it, and its members are not vulnerable to such attack. Even with respect to judicial officers, it has been held in this state that, unless the statute provides a remedy declaring that bias or prejudice on the part of a judge shall be a disqualification, it cannot be lodged against the officer. (*In re Davis' Estate*, 11 Mont. 1, 27 Pac. 342; *In re Weston*, 28 Mont. 207, 72 Pac. 512.) The rule of disqualification does not apply to officers not judicial, although every case may call for the exercise of judgment and discretion. (Works on Jurisdiction, 409; *State* v. *Wells*, 210 Mo. 601, 109 S. W. 758.)"

In this connection it is well to bear in mind that proceedings for the removal of a public officer are not essentially judicial in character. In the case of *State ex rel. Payne* v. *District Court*, supra, it was said: "Indeed, the power to remove an unfaithful or negligent public official is not essentially a judicial power. Under our Constitution, its exercise is left to the legislature itself or to such other authority as the legislature may designate."

Whether the reasons assigned by the Governor for declining to hear testimony under the second affirmative defense were justifiable or not, clearly under the foregoing authority the facts set forth therein had no place in the hearing before the Governor. Evidence in support thereof is inadmissible.

The question remains as to how far the courts may go in interfering with or directing the exercise of power by one of the co-ordinate departments of government vested in it by the Constitution or valid legislative enactment. In the case of *Fulmer* v. *Board of Railroad Commrs.*, 96 Mont. 22, 28 Pac. (2d) 849, 853, we said: "From the beginning of statehood, the theory of independent departments of state has been a fruitful source of judicial investigation and declaration, but always the judicial department has refused to coerce or restrain either of the other departments so long as it was acting within its proper sphere and regularly in accordance with lawful authority," and quoted with approval what was said by this court in the case of *State ex rel. Publishing Co.* v. *Smith*, 23 Mont. 44, 57 Pac. 449, 451, as follows: "The ultimate purpose was, by this system of counter-checks, to secure economy and prevent favoritism. It is not for us to say whether the provision is a wise one or not. These officers, acting within the sphere of their constitutional duties, are accountable, under their oaths, to the people only, just as are the individual members of this court, and it is no part of our duty to inquire into their motives in withholding their approval from the contract led by the board to the relator. * * * The forum in which they are to be judged is the minds and consciences of the people, whose servants they are, and who alone can hold them responsible for the manner in which they perform their duties." The courts may only by their processes confine a co-ordinate department within its proper sphere, and, as applied to a proceeding of this kind, compel the Governor to hear and decide, but may not control executive discretion.

From the consideration of the foregoing, it will be observed that the respondent court by its temporary restraining

order not alone sought to confine the executive department within its proper sphere, but invaded the powers of the executive department to the extent of prohibiting either the continuance of the hearing under consideration to its final conclusion, or, should charges be preferred upon other grounds by any citizen before the Governor, or by the Governor himself, likewise inquiry into them is prohibited. To that extent respondent court exceeded its powers. It forbade the Governor from doing exactly what the laws of the state authorize him to do.

Let a peremptory writ issue forthwith out of this court to the respondent court commanding it to forthwith modify the restraining order to the end that it no longer prohibits the Governor from continuing to a conclusion the hearing heretofore commenced on the charges already filed on notice to the members of the board or their counsel, or any further hearing on any other charges hereafter filed, and that as to the writ of review issued out of the respondent court it be quashed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES MATTHEWS, STEWART and ANDERSON concur.

MR. JUSTICE MORRIS: I dissent. The majority opinion holds, in effect, that the district court was in error in granting the writ of prohibition in the comparatively unimportant particular wherein it denies the power of the Governor to proceed further with the hearing looking to the removal of the members of the Highway Commission, but upholds the contentions of the members of the commission and affirms the district court in denying the power of the Governor to remove the members of the commission upon the hearing had.

The Governor, as the executive head of the state government, is vested with broad discretionary powers and the majority opinion creates a dangerous precedent by unreasonably restricting such discretionary powers in the removal by the executive of members of his official family, his appointees. The fact that the members of the present commission are not the

appointees of the present Governor is of no moment to the controversy. Upon the Governor practically alone rests the responsibility of the credibility of his administration, and to deny him the practical control of his appointees, particularly in the expenditure of public funds, goes a long way towards the destruction of the right to hold the Chief Executive responsible for the efficient administration of a government of which he is the head and which was one of the chief purposes of having a single individual the executive head of the government.

It is my opinion that the reasoning of Chief Justice Taft in the case of *Myers* v. *United States,* 272 U. S. 52, 47 Sup. Ct. 21, 25, 71 L. Ed. 160, is unanswerable. That opinion defines the powers of appointment and removal of the President as such powers relate to the appointment of inferior executive officers, and the reasoning applies to the Chief Executive of a state, as well as the Chief Executive of the nation. . It was there said in part: "The vesting of the executive power in the President was essentially a grant of the power to execute the laws. But the President alone and unaided could not execute the laws. He must execute them by the assistance of subordinates. \* \* \* As he is charged specifically to take care that they be faithfully executed, the reasonable implication, even in the absence of express words, was that as part of his executive power he should select those who were to act for him. \* \* \* The further implication must be, in the absence of any express limitation respecting removals, that as his selection of administrative officers is essential to the execution of the laws by him, so must be his power of removing those for whom he cannot continue to be responsible. \* \* \* To hold otherwise would make it impossible for the President, in case of political or other difference with the Senate or Congress, to take care that the laws be faithfully executed."

This is my first ground of dissent from the majority. My second is that by analogy to the procedural practice in courts of law, the Governor's decision was clearly justified as a "judgment on the pleadings."

In the case of *State ex rel. Nagle* v. *Sullivan*, 98 Mont. 425, 40 Pac. (2d) 995, 99 A. L. R. 321, upon which the majority largely rely, the attempted removal was made summarily, without notice or hearing. In the action at bar specific notice was given setting out in detail the matters and things with which the Governor charged the members of the commission as having done illegally. Amongst such charges was that two members of the board had appointed the third to do and perform certain things for a stipulated compensation, and under such authority the member so authorized had drawn out of the state treasury more than $5,000. The members of the commission in their answers admitted this accusation, but now contend that they were not accorded a hearing in fact, because they were not permitted to show "good faith" in such acts. When a plain and palpable violation of law is admitted, where is the necessity for granting a hearing to show good faith? That such act of a board of public officials is in derogation of sound public policy and the law is everywhere accepted as is shown by numerous decisions in the books, and both the law and common sense will sustain the statement without incumbering the record with useless citations.

The ban placed upon the Governor by the writ issued out of the district court is raised by the majority opinion in order that the Governor may proceed with further hearing if he desires, and at such hearing additional charges may be made and the defense of good faith urged. After such hearing it will then be within the power of the Governor to render his decision irrespective of the evidence produced, and it still remains within the power of the Governor, acting within the broad discretionary powers vested in him, to determine whether he will remove the members of the commission or not, and neither this court nor any other may review that determination unless it is clearly shown that such discretionary power has been exercised arbitrarily or capriciously (*State ex rel. School District* v. *Cooney*, 102 Mont. 521, 59 Pac. (2d) 48), and it would be a courageous judiciary that would hold it

452

capricious in the Chief Executive to call to account or dismiss a public servant who expends public funds in the manner it is admitted they have been expended by the admissions in the answers in this proceeding.